## Coovert *against* O'Conner.

A grant from the commonwealth of vacant land, bounded by a stream which has not been declared navigable by law, and following its courses and distances, passes the right to the soil to the middle of the stream; and although the stream may subsequently to the grant be declared a public highway, that does not divest the property previously acquired by a grant from the commonwealth.

ERROR to the common pleas of *Beaver* county.

Samuel Coovert, Wm. Coovert and Luke Coovert against Lawrence O'Conner and Wm. Ayres. The court below thus stated the case, and charged the jury:

*Bredin,* president.—This ejectment is instituted to recover the possession of five acres of ground, claimed by the plaintiffs, as part of lot No. 2, of 500 acres in the first donation district. The plaintiffs have given in evidence a patent from the commonwealth to Stephen Bayard, for lot No. 2 of 500 acres, first donation district, dated the 15th of December 1786; and have given in evidence a regular claim of title, from the patentee to the plaintiffs, for the acres of land in dispute. The defendants claim, under a patent granted by the commonwealth to Benjamin Steel, for lot No. 1816, of 200 acres, in the second donation district, dated the 17th of January 1787. As to the legal title of the plaintiffs, or the title under which the defendants claim, there is no difficulty. The controversy in this case arises on an alleged interference of the lines of lot No. 2, of 500 acres, in the first donation district, with the lines of lot No. 1816, in the second donation district. The courses and distances in the patent for lot No. 2, of 500 acres, are as follows: "Beginning at a post and white oak the numbered corner, and running east 17 perches, to a birch on Big Beaver, thence down said creek the following courses: south 76 degrees east, 75 perches, north 83 degrees east, 40 perches, south 62 degrees east, 125 perches, north 55 degrees, east 23 perches to a post; thence south 275 perches to a white oak, thence west by lot No. 19, 236 perches to a post and line, thence north by lots Nos. 22 and 23, 360 perches to the place of beginning." The courses and distances in the patent for lot No. 1816, of 200 acres in the second donation district, are as follows: "Beginning at a maple, the numbered corner, and running south by lot No. 1815, 139 perches, crossing Beaver creek to a post, thence east by lots No. 2 and 25, of district No. 1, recrossing said creek, 320 perches to a post, thence north by lot No. 87, 139 perches, to the place of beginning.

A number of witnesses have been examined on the part of the

[Coovert v. O'Conner.]

plaintiffs, and on the part of the defendants, with regard to the lines, and also as to whether the mill is below the low water mark, or on the beach of the Mahoning creek, (called in the patent Big Beaver,) and also to prove the lines to which those who formerly lived on these tracts claimed, and on the part of the defendants, Alexander M'Dowell proved that he traced the lines of lot No. 2 of 500 acres, in the first district, and lot No. 1816, in the second donation district. Commenced at the southeast corner of lot No. 87, 300 acres, run east to New Castle, along the district line, found marks that counted 47 years was the district line. Returned to the same corner, run west to the Mahoning, found no original marks; found blazes counting 38 years; continued west to the western boundary line of lot No. 2, first donation district, found there original marks; run north 48 perches, and found the corner of lot No. 2, a white oak; the corner was down.

Judge Brown proved that he was called on to make a survey for Mr Henderson. Commenced on the east side of the Shenango; run west, found the lines across Nos. 87, 88, 89, and 90; found the line well marked, and had no doubt of its being the district line. Commenced at a corner, run east, found no original mark; discovered on 88 an old line, 9 or 10 perches south of the district line; not positive whether this line was across 88 or 89; has since followed the district line to Mahoning, in 1830. Called on by John O'Conner to make survey: commenced at his northwest corner, run south to the Mahoning, crossed over, took the breadth of the creek, found corner marks there not original; took notice of a white oak old enough for the line; was with Mr M'Dowell, and his recollection corresponds with Mr M'Dowell. David Young proves, that he was with Mr M'Dowell, and agrees with his recollection of the lines and marks found. Considers the mill below common water mark; if the embankment was removed, the water would run between the mill and the bank. Mr Clark told witness he had built the mill on the public highway, and had as good a right as Mr O'Conner. No. 1816 was conveyed by Mr Lukens, in 1806: he claimed under a lease from Nathan Luffborough—Lukens occupied a sugar camp south of the Mahoning; never saw a birch where the mill stands. Wm. Cox, in 1801 or 1802, began at the Shenango, and run to the Mahoning. Lukens got Stewart to run across the creek, and found a post on a knoll, running east to the creek 17 perches, found a beech, and blocked it; counted the age of the original lines; the patent called for the meanderings of the stream; the first course dipped into the creek. On the 22d of February 1837, was sent for; commenced at the beech; run east; found no marks; a little south found marks. A red oak, with an original mark on it; found no marks; on 87, running east, was 38 perches north of the district line. On lot No. 81, found original marks as far as traced. The district line and the county line are the same; counted the trees blocked by Mr Findley and Mr Alexander; none

counted 51, but the trees mentioned. The mill is within the lines of No. 1816, and is under the bank of the creek; could not say whether the mill is within the lines of No. 2, as he did not run the meanderings of the creek. Lot No. 89 is 16 perches north of the district line.

Walter Oliver, Esq.—In 1829, at the request of the heirs of Stewart, made a division of No. 88, second donation district; commenced at the northeast corner run south the length of the tract, found on the lot on the east, the original line; found a new line run by Judge Brown; not satisfied as to the correctness of the south boundary line, got a draft; it called for the district line. Went to the black oak sprout that was marked, run from 10 to 12 perches south; found a marked white oak; run west; found a well marked line. Returned, run east 30 or 40 perches, to a sugar tree, said to be the corner of Mrs Miller's tract. When I came to the woods, found a well marked line, until I came to the Stewart tract; run then north 10 perches, and was satisfied that it was the district line. Last week, on Thursday, commenced at the northwest corner of O'Conner's tract, run south to the Mahoning creek 100 perches, the breadth of the creek 16 perches; found it including the creek 143 perches; run eastwardly to the rising ground; was shown marks, was taken to the beech corner on the bank of the creek. Commenced at the beech, run a line south 72 degrees east, 75 perches; run through a bend of the creek; run north 83 degrees east, 40 perches. Went back; took a sight down to the situation of the mill; left the mill some perches on the north side of that line, then crossed the creek, dropped east, and found it corresponded with the line; was along when Mr M'Dowell run the line. The mill is on what I call middling low water mark. No. 1816 has been occupied from 1800 to the present time; the vacancy runs out at the second tract.

Thomas Lukens proves, that the mill is standing where the water run, and were it not for the embankment, would run south of the mill. Joshua Chenoworth proves, that he has known the tract for 35 years, that three corners of the mill are below low water mark. James Moony proves, that he was present at the building of the mill; witness found fault with the foundation of the mill. Clark said Mahoning was a navigable stream, and he would occupy it; the south side of the mill is on the five acres, according to the way the ground lies. Was present at a survey made by James Bryant, deputy surveyor of Beaver county; left the mill on the north side. James Davis made a survey; his survey agreed with Bryant's—was along when the surveys were made.

On the part of plaintiffs, John Findley proves that, as an artist appointed by the court, he examined the interferences. Commenced at the northwest corner of the tract, one range further west than this tract, run east from that to what was supposed to be the corner of this tract—blocked the trees, and found them to be run in

85; measured to the creek 17 perches; went to the creek, taking the meanders altogether in the creek; found no marks; his compass divided the mill-house in two parts; run the lines as we found them on the ground; they had been run at 3 degrees of a variation. Began at the beech, crossed the creek, and came to where O'Conner's corner ought to be; found a white walnut had the appearance of an original mark; found on the maple an axe mark; counted it, and found it the age of the donation surveys. Came to the line on the eastern boundary, blocked 3 of the trees, counted from 49 to 50 years. Examined what is called the district line; found nothing older than 26 or 27 years. Some time afterwards went to the land; commenced at the beech and run to Newcastle; nearly all the way cleared land in a swamp, about one-half distance of the tract found an elm in a bunch of woods in the swamp, same age as the donation surveys. Went across the tract called the Schott tract, no marks; did not get leave to examine the next tract. I found none older than the county line; only blocked 3 trees; the nearest about a rod off the line.

Benjamin Alexander proves, that, on the 1st of February a year ago, went, at the request of Mr Coovert, to make a survey. I ran at a variation of 3 degrees; I counted the growths of the maple; went to the corner spoken of; it was lying; it counted from 37 to 38 years; notched on three sides, north, east, and west; no notches on the south; the pointers counted 51 years. Then run down to the county line; 3 trees marked; counted from 25 to 28 years. Went back, and run from that corner south 86½ degrees, west until we came to Mahoning; one set of the marks counted 36 years, and the other 51; found seven marked trees that were original.

Two of the trees west of Mr O'Conner's line, the tree that was fallen out of root, a black oak, counted 25 to 28 years running up the Mahoning, north 68 degrees west, 92 perches, south 82 degrees west, 50 perches, north 80 degrees west, 86 perches, run very close to the corner of the mill; the seven trees did not include the elm; I did not see it. Thomas Hendrickson was at Jonathan Biddle's, in 1806, and discovered a corner; there was a beech there; showed him a red oak, the corner of the Schott tract; this corner is 30 rods north of the county line. Where the mill now stands, there was a hard beach at an early day—water running between the beach and the creek.

Leonard Dobbin.—After Alcorn got the 500 acre tract, saw them survey it; the creek is now nearly one-third wider than when I first became acquainted with it; where the mill now stands, was solid ground, but it is wasted away some years ago. There was a road below the bluff, it is now all washed away. The mill now stands where there was a road between the steep bluff and the beach; the sugar tree, the corner of No. 25, was near the bank of the creek. In 1817 or 1818, saw Mr Dunn, the surveyor; Mr Dunn and Mr O'Conner were disputing; Mr O'Conner said his patent

called for crossing the creek; Dunn said he would run to the South Pole if he paid him for it. It was solid ground; could not go along at all when the creek was so high as not to be rode.

Nicholas M'Gowan was along when Mr Alexander made the survey and carried the chain; found the tree down marked east, west and north; found the maple on the east bank of the Mahonny, blocked by Mr. Findley, counted 38 growths; run across the vacancy, 30 rods; run east 200 perches across the Schott tract. The foundation of the mill, if my recollection serves me, was set into the bank.

The plaintiff contends that, notwithstanding the patent under which they derive their title, calls for the Big Beaver as the boundary, and his numbered corner is found on the ground as called for by the patent, and is 17 perches west of the beech on the bank of the creek, which is also called for by the patent, and found on the ground, agreeing with the draft, that they are entitled by the patent to cross the creek, and hold the land north of the creek to the line spoken of by two of the witnesses, Mr Findley and Mr Alexander.

The general and settled principle of law is, that the lines and marks found on the ground are the true lines, and control the courses and distances returned in the draft, and contained in the patent; and, where the survey does not call for a natural boundary or for the line of another tract, the courses and distances in the patent will govern. It is also contended that the principles of law that have been settled as to donation surveys, supports the point contended for by the plaintiff. In the case of Smith *v.* Moore, 5 *Rawle* 248, it is decided, that the numbered corner found on the ground controls the boundaries in the general draft, in treating the patent; and in the case of Christy *v.* Grossman, which is not reported, it is decided, that the numbered corner, even if made by mistake, controls all natural and other boundaries called for by the patent, and located on the tract. The court entertains the opinion, that these principles are against the position contended for by the plaintiffs. Their numbered corner, so proved to be found on the ground south of the creek, is 17 perches west of the beech which is also found on the ground on the bank of the creek, as called for by the draft and patent. The plaintiff, therefore, cannot extend these lines down 20 or 30 perches north of their numbered corner, disregard the line running east from the numbered corner to the birch on the bank of the creek, called for by the drafts and found on the ground; and although, from the bank, their patent calls for the Mahoning as the boundary, following its meanders on the south bank of the stream by courses and distances, cross the creek, and hold the land north of the creek. The principles decided in the case of 4 *Watts*, 261, apply with great force to the present case, and is much stronger on the facts if believed by the jury than that case.

It is contended, that if the plaintiffs cannot by their patent cross

[Coovert v. O'Conner.]

the Mahoning, and hold the land to the line spoken of by two of the witnesses, there is a vacancy between the two lots by the work on the ground. The patent for lot No. 1816, under which the defendants claim, is bounded by lot No. 2 and 25 on the south, and calls for crossing and recrossing the creek. The court entertains the opinion, that even if there were evidence to satisfy the jury that a line was found on the ground some perches north of the Mahoning, agreeing in age with the donation lines, the boundary of lot No. 1816 would be lines of No. 2 and 25, as called for by the patent and found on the ground, and would be south of the Big Beaver, (now called Mahoning,) and this opinion it is convinced is sustained by the general principles of law with regard to lines, as also by the decision in 4 *Watts,* 261.

We are requested, by the plaintiffs' counsel, to instruct you that the defendants can only come to the centre of the stream. The principles of the common law as applied in England to navigable streams, have not been adopted in Pennsylvania with respect to our rivers that are navigable. Where the stream is not a navigable river, a case might exist in which the principles of the common law would govern. If, in the present case, both patents had called for the Mahoning as the boundary, the one following the meanders of the stream by courses and distances on the north side, the other following the meanders on the south side by courses and distances, the court is of opinion, that the principle of the common law would govern, and that each would have a right to go to the centre of the stream.

This case is entirely different from the one which I have stated. The patent under which the plaintiffs claim is bounded by the Mahoning on the north and follows the meanders of the stream by the courses and distances stated in the patent.

The patent under which the defendants claim, is bounded on the south by the line of plaintiffs' patent, and calls for crossing and recrossing the creek. There is no principle or statute of law that prevents the officer of the land office from fixing the bank of a stream, not naturally a navigable river, as the boundary of a tract of land, and embracing the whole of the stream, and in fixing the boundary of another grant as bounded by the line on the bank of the creek, and each having title according to the respective grants and surveys. The court is of opinion, that the plaintiffs are not entitled to go to the centre of the creek—that from the birch on the bank of the creek, following the meanders of the creek, they have title to low water mark, and that the defendants, under the patent for lot No. 1816, cross the creek, and have title to low water mark.

Is there any part of the mill out of low water mark, and within the bounds of the five acres? If there is, your verdict will be for the plaintiffs.

If the mill is entirely in the bed of the stream, and no part of it

on the bank or out of low water mark, your verdict will be for the defendants.

Errors assigned:

1. Instructing the jury that plaintiff cannot cross the Mahoning, as that stream is called for as a boundary.

2. Charging that even if there was a line and corners found on the ground north of the Mahoning, agreeing in age with the donation survey, yet as the southern boundary of 1816, is lots Nos. 2 and 25, the lines of those tracts form the boundary of 1816, and, therefore, defendant could run past the line and corners, and cross the Mahoning.

3. In deciding that plaintiffs' patent would not enable them to hold to the centre of Mahoning creek, but merely to low water mark on the south bank of the creek, and that defendants' patent would hold to low water mark on the south bank of the creek.

4. In deciding that if the mill was entirely in the bed of the stream, and below low water mark, plaintiffs could not recover.

*Pearson*, for plaintiff in error.
*Sullivan*, for defendant in error.

The opinion of the Court was delivered by

Sergeant, J.—We perceive no error in the principles laid down by the court below, in relation to the lines and boundaries of the patents of the parties, on which the first and second errors are assigned; and, indeed, these errors have been but faintly urged. The main point is as to the direction of the court, stated in the third and fourth errors, respecting the right of the plaintiffs, under their patent, to hold to the centre of the stream. The plaintiffs' patent is dated the 15th of December 1786, and, being earlier than the defendants', has the priority, and may claim to be satisfied for all the vacant ground it calls for, without being curtailed or interfered with by the defendant's patent, which did not issue until the 17th of January 1787. The description in the plaintiffs' patent is as follows: " Beginning at a post and white oak, the numbered corner, and running east seventeen perches *to a birch on Big Beaver run; thence down said creek the following courses:* south seventy-six degrees east, seventy-five perches, north eighty-three degrees east, forty perches, south sixty-two degrees east, one hundred and twenty-four perches, north fifty-five degrees east, twenty-three perches, to a post; thence south two hundred and seventy-five perches to a white oak," &c. It is clear, as was the opinion of the court below, that according to the corner called for and the courses and distances stated, the plaintiffs' northern boundary is the creek, by its courses and meanderings, agreeably to the principles settled by this court in Hart *v.* Hill, 1 *Whart.* 131, and Klingensmith *v.* Grounding, 5 *Watts* 458. And the question is whether the plaintiffs, by virtue of their boundary of the creek, hold to the centre of

the stream of Mahoning creek, (called, in the patent, Big Beaver run,) or only to low water mark. The court below charged the jury, that the plaintiffs are not entitled to go to the centre of the creek; that from the birch on the bank, following the meanders of the creek, they have title to low water mark; and that the defendants, under their patent for lot No. 1816, cross the creek, and have title to low water mark.

It is to be observed, that the Mahoning creek here referred to, was not, at the time of these grants, declared a public highway, though it has been since declared so by an act of the legislature. Being then considered as a stream not navigable, it is a settled principle that a grant, from the state, of vacant land, bounded by such a stream and following its courses, passes the right to the centre of the stream.

All rivers, lakes and streams comprehended within the charter bounds of the province, passed to William Penn in the same manner as the soil. In grants of tracts of vacant lands by him or his successors, during the proprietary times, and by the commonwealth since, streams not navigable, falling within the lines of a survey, were covered by it and belonged to the owner of the tract, who might afterwards convey the body of the stream to one person and the adjoining land to another. 2 *Pet.* 64. When streams not navigable formed the boundary of such tract, the grantee acquired a title *ad filum aquæ*. The large rivers and principal streams, by nature navigable, belonged to the commonwealth, as well where there was no tide, as where the tide ebbed and flowed, contrary to the principles of the common law, and of some of the states, in which, in all rivers and streams where the tide did not ebb and flow, the grant of land, with a boundary on the stream, extended *ad filum aquæ*. Carson *v.* Blazer, 2 *Binn.* 475; Shrunk *v.* Schuylkill Navigation Company, 14 *Serg. & Rawle* 71. And the very point before us was decided by this court, in the case of Ball *v.* Slack, 2 *Wharton* 538, which case was elaborately argued and much considered. There Mr Justice Huston, delivering the opinion of the court, lays it down as a settled principle in Pennsylvania, that when a grant or survey is bounded on a river or creek, it extends to that river or creek, and (except in the case of large navigable streams) extends to the middle of the creek.

Although the Mahoning has since, as is stated, been declared a public highway, that does not divest the property previously acquired by a grant from the commonwealth, as between these parties, but leaves to the owner his right to the soil covered with the water, to the middle of the stream, as well as every other right he purchased, not inconsistent with the public use of the stream as a highway; which is all in the case of streams, not by nature large rivers or principal streams of the commonwealth, that the commonwealth may be considered as tacitly reserving at the time of the

grant, whenever the public benefit should hereafter require a legislative declaration to be made.

Judgment reversed, and a *venire facias de novo* awarded.