# Gilchrist's Appeal.

1. The limit of a municipality, bounded by a navigable river, is the low water-mark of that river, unless express language to the contrary is used in the Act of incorporation.

2. The taxing power of a municipal corporation does not extend beyond its geographical boundaries.

3. The city of Wilkes-Barre is bounded on the northwest by the low

water-mark of the Susquehanna river, while the boroughs and townships on the opposite side of the river are likewise bounded by low water-mark thereon. After the erection by the commonwealth of said municipalities, the coal beneath the bed of the river was conveyed by the commonwealth to private parties.

*Held*, that such coal cannot be taxed by the city of Wilkes-Barre

4. Whether the legislature may provide for the taxation of the said coal not decided.

April 17th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN J., absent.

APPEAL from the decree of the Court of Common Pleas of *Luzerne county :* Of July Term 1885, No. 9.

Appeal of John W. Gilchrist, receiver of taxes for the city of Wilkes-Barre, from a decree of the Court of Common Pleas of Luzerne county, enjoining him from collecting county and local taxes assessed upon certain coal beds of the Delaware, Lackawanna and Western Railroad Company, situated beneath the Susquehanna river, opposite the city of Wilkes-Barre.

This was a bill in equity filed by the Delaware, Lackawanna and Western Railroad Company, against John W. Gilchrist, receiver of taxes for the city of Wilkes-Barre, and the city of Wilkes-Barre, averring as follows : The corporation complainant is the owner of some 85 acres of coal underneath the Susquehanna river, opposite the city of Wilkes-Barre, being known as " river warrants," and extending under the river from low water-mark. Certain taxes had been assessed for the year 1883 against 12 acres of this coal as in the Seventh ward of the city, and against 73 acres as in the Tenth ward of the city, at a valuation of $100 per acre, which taxes the defendant receiver of taxes threatened to collect by process of law. The bill further averred that the coal is not situated within the limits of the said city, inasmuch as the westerly boundary thereof is the low water-mark on the eastern shore, and that therefore the assessment and proposed collection of the taxes was illegal. The bill prayed for an injunction to restrain the defendants from proceeding to collect them.

The answer of the defendants averred that the said coal was within the Seventh and Tenth wards of the city ; that the western boundary of the same was the thread or middle of the Susquehanna river, and that the coal proposed to be taxed lay between the low water-mark on the eastern shore of the said river and the middle line or thread thereof.

The case was referred to F. M. Nichols, Esq., as examiner and master, who filed his report, finding as conclusions of fact, inter alia, the following:

*First*—The township of Wilkes-Barre was erected by order of the Court of Quarter Sessions of Luzerne county, in the month of March, 1790, and its boundaries were prescribed as follows, viz.: Northerly by Lackawanna township, northwesterly by the Susquehanna river, southwesterly by Hanover township, and southeasterly by the county line. The southeasterly limits of the townships of Kingston and Plymouth, situate on the westerly side of the Susquehanna river, opposite the city of Wilkes-Barre, are, in the order of the court by which they were erected, bounded by the Susquehanna river.

*Second*—The borough of Wilkes-Barre was erected on the 17th day of March, 1806, and by virtue of certain annexations thereto its northwest boundary on the 4th day of May, 1872, ran along the Susquehanna river, at low water-mark, from a point, now in the northerly limit of the city of Wilkes-Barre, to a point in the Tenth ward of said city, distant about 1300 feet south of the northerly boundary of said ward.

*Third*—The city of Wilkes-Barre was incorporated on the 4th day of May, 1872, and its geographical limits embrace all the territory at that time occupied by the borough, and that portion of the township lying west of the Empire road.

*Fourth*—The proper authorities of the city of Wilkes-Barre, for the year 1883, assessed 71 acres of coal, lying under the Susquehanna river, belonging to the complainants, fixing the valuation thereof at $100 per acre, and thereon levied taxes, amounting in the aggregate to $315.95, for the following purposes, viz.: . . . . .

*Fifth*—Duplicates containing the said taxes have been placed in the hands of the respondent, as Receiver of said city, with warrants attached for the collection of said taxes, and the said Receiver has notified and threatens the said complainants that unless said taxes are promptly paid, he will proceed to collect the same by levying upon and selling the property of the complainants.

*Sixth*—All the said coal is situate in the Susquehanna river, within the range of the northern and southern limits of the city of Wilkes-Barre, between low water-mark along the shore or bank of the river in said city and the centre of the stream.

*Seventh*—Twenty-two acres of the said coal, viz.: Twelve acres in the Seventh ward and ten acres in the Tenth ward lie within the northern and southern boundaries of the borough projected to the centre of the stream, as said borough was constituted at the time the city was incorporated.

The Master further stated the following as his conclusions of law:

1. The boundaries of the city of Wilkes-Barre embrace all

that territory west of the Empire road, bounded on the north by Plains township, on the northwest by the Susquehanna river, and on the southwest by Hanover township.

2. The limit of a municipality along a non-tidal navigable stream in the state of Pennsylvania, unless express language to the contrary is used in the Act of incorporation, is at low water-mark.

3. The jurisdiction of the taxing power of a municipality does not extend beyond its geographical boundaries.

4. The northwestern boundary of the city of Wilkes-Barre is along the eastern shore of the Susquehanna river at low water-mark, and all the coal assessed to the complainants lies beyond and without the geographical boundaries of the said city.

5. The assessment complained of in this case involves an exercise of the taxing power on the part of the assessors of the city of Wilkes-Barre, over property not within the territorial jurisdiction of said city.

6. The action of the respondent in attempting to collect said taxes is illegal.

The Master therefore recommended that the prayer of the complainants be allowed, and that the respondents be restrained by injunction from collecting the taxes specified in the bill.

The respondent Gilchrist excepted to the Master's conclusions of law, which exceptions the court dismissed; the report was confirmed and the injunction awarded. Whereupon the respondent Gilchrist took this appeal, assigning for error the decree of the court overruling his exceptions to the several conclusions of law reported by the Master as above stated.

*Alexander Farnham* (with whom was *William S. McLean*), for the appellant.—The single question in dispute is whether the limits of municipalities bounded by a non-tidal navigable stream are at low water-mark along the stream, or whether the thread of the river is the boundary. But the taxes levied are not only for the municipal purposes of the city of Wilkes-Barre but also for county purposes, and so far as the latter are concerned the assessors are merely city, not county officers. They simply determine the value of the land located within their wards. As, however, they cannot assess land situated without the ward boundaries, it would follow, if the court below is correct, that the state and county cannot derive any revenue from these lands. The Master bases his report upon the Acts of March 14th, 1761, 1 Smith L., 231; March 9th, 1771, 1 Id., 324; and March 31st, 1785, 2 Id., 311, declaring the Susquehanna to be a navigable river. But the

purpose of these Acts was merely the improvement of the navigation of the river and the preservation of the fish, not the exclusion of municipal jurisdiction over the stream. As to this no change was intended in the common law, and therefore the rule "*usque ad filum aquæ*" should prevail. None of the Pennsylvania cases on riparian boundaries involve the question of municipal jurisdiction except Johns *v.* Davidson, 4 Harris, 512, which would lead to anomalous results. It would be impossible, for example, to serve a summons on a defendant while navigating a river between two counties if the sheriff of neither county had jurisdiction: Pratt *v.* State, 5 Conn., 388; Adams *v.* Pease, 2 Id., 481.

*J. Vaughan Darling* (with whom were *George R. Bedford, E. P. Darling* and *A. T. and A. H. McClintock,*) for the appellees.—Even if the statutes cited by the appellants had no further object than the preservation to the public of the rights of navigation and fishery, it would not follow that the grants of the state to its creatures, the municipalities, should be construed to grant further or higher rights than grants to individuals. It would still remain incumbent upon the appellants to establish some distinction between the construction of the one set of grants and the other.

Even at common law " parishes and towns upon tide-waters extended like private estates, only to the high-water mark:" Hale, de jure Maris, c. 4.

Thus this part of the appellants' argument, which is assumed rather than stated, is that a distinction exists between " navigable rivers " at the common law of England and those rivers which have been declared " navigable " in this state, and that the latter are " navigable " only in a modified sense and for limited purposes. Unless this proposition is established the appellants have no case, since if this commonwealth in declaring the great fresh water non-tidal rivers of the state to be navigable abolished the English rule which confined the definition of navigable streams to those in which the tide ebbed and flowed, then the principles of the English law relative to tidal streams applied to navigable streams as established in this state, and among these principles that which stopped both municipal and private rights bounded by such streams at the high-water mark.

No authority for the proposition is given. On the contrary the legislature has declared the fresh water streams of the state to be navigable, and this court has decided that " we hold as navigable not only those streams which are subject to tides, but all rivers capable of being navigated ": Shrunk *v.* Navigation Co., 14 S. & R., 71; Carson *v.* Blazer, 2 Binn.,

475; Flanagan v. Phila., 6 Wr., 219. That the state has retained jurisdiction over navigable streams is shown by numerous Acts where such jurisdiction has been exercised, as in Act of March 14th, 1761, 1 Smith L., 231, and Acts of 1860, §§ 48, 49; Purdon, 386, pl. 51, 52.

Chief Justice MERCUR delivered the opinion of the court, April 27th, 1885.

It is well settled law in Pennsylvania that the common law of England which deems a river a public highway only so far up from its mouth as the tide flows, does not apply to our large streams, such, among others, as the Susquehanna and its north and west branches. One reason given for so declaring the law was said in Carson v. Blazer, 2 Binn., 475, to be the fact that in England the streams in which the tide does not ebb and flow are small, while in this state they are large. The law thus announced in 2 Binn. has been approved and affirmed in Shrunk v. Schuylkill Nav. Co., 14 S. &. R., 71; Johns v. Davidson, 4 Harris, 512; Barclay Railroad and Coal Co. v. Ingham, 12 Casey, 194; Zimmerman v. Union Cana. Co., 1 W. & S., 346. These and other cases have also settled the law that when a navigable river, which is held to be a public highway under the common law of this state, is made the boundary of a grant by the commonwealth, the title passes to low-water mark, but no further. It is to small streams not navigable that the principle of usque ad filum aquæ applies: Ball v. Slack, 2 Whart., 538; Coovert v. O'Conner, 8 Watts, 470; Johns v. Davidson, supra; Flanagan v. City of Philadelphia et al., 6 Wr., 219.

Turning then to the able report of the Master confirmed by the court, it appears that the borough of Wilkes-Barre was bounded on the northwest by the Susquehanna river at low-water mark. When the city was afterwards incorporated its boundary went no further into the river. The township, out of which the borough and the city were carved, was bounded by the river. In like manner the townships situate on the opposite side of the river were bounded by the river. The land covered by water situate between the two boundaries was not so granted as to be within any of the municipalities named. The coal underlying the same has since been granted by the commonwealth, but it has not been attached to the city of Wilkes-Barre, nor have the boundaries of the city been extended so as to bring it within the limits thereof. Whether this body of coal ought to be subject to taxation, or whether the legislature may not at any time declare it shall be, and provide by what authority it shall be taxed, are questions not before us now. We merely hold, under existing laws the city

of Wilkes-Barre has no power to impose taxes on this coal land lying outside of its territorial limits.

Decree affirmed and appeal dismissed at the cost of the appellant.