### JENNINGS ET AL. v. OHIO NATIONAL BANK ET AL.

EQUITY AGAINST A DEALER IS EQUALLY AGAINST A JUDGMENT CREDITOR WHOSE LIEN IS OBTAINED SUBSEQUENTLY TO PRIOR CREDITOR ENFORCING HIS EQUITY.

P. had a decree under a first mortgage and levied by execution upon the personal property. B. had a second lien by mortgage upon the real estate, but had no lien upon the personal property: *Held*, that as B. had a right to compel P. to first exhaust his levy upon the personal property on which B. had no lien, it is not competent for another creditor to come in and by a subsequent levy upon a subsequent judgment displace such right.

ERROR to the Court of Common Pleas of Lucas County, Ohio.

SCRIBNER, J.

On November 13, 1889, Perry Wood, as guardian of Samuel Wagner, brought his action in the court of common pleas of Lucas county, Ohio, against Franklin D. Cummer, The Flint Glass Sand & Stone Co., and The Ohio National Bank of Cleveland, Ohio. The proceeding was instituted upon a promissory note executed by Franklin D. Cummer, the payment of which shortly afterwards was assumed by the Flint Glass Sand & Stone Co., and also for the foreclosure of a mortgage given by Cummer to Wood as guardian, upon certain real estate in Lucas county, to secure the payment of the note in question. This note was dated August 1, 1888, and the mortgage bears date August 13, 1888. It is set forth in the petition that the defendant, the bank, claimed to have some lien upon or interest in the real estate, and for that reason was made a party defendant to the proceeding. A personal judgment and the usual decree in foreclosure was rendered upon this petition, by the court of common pleas, June 24, 1890. This personal judgment was rendered against Cummer, as the original maker of the note, and the Flint Glass Sand & Stone Company, on its alleged liability for the payment of the note growing out of the transaction between Cummer and that company. It appears in the record that shortly after the execution of this mortgage, the Flint Glass Sand & Stone Company, in consideration of the transfer to it of the property mortgaged by Cummer, assumed payment of this promissory note, and on the note as against Cummer and upon the contract as

against the Flint Glass Sand & Stone Company, a personal judgment w.is founded, attended as I have said, with the ordinary decree in foreclosure. Sometime prior to May 7, 1892, a judgment and decree so obtained were transferred to Henry E. Palmer, but we do not find, on examination of the record, that Mr. Palmer was ever made a party in any form to this proceeding; and if he was so made a party, we have overlooked it.

The bank, which was a party, filed its answer and cross-petition against the Flint Glass Sand & Stone Company and the defendant, Cummer, on Januard 23, 1890. This was really a short time prior to the entry of the judgment and decree in favor of Wood as the guardian of Wagner—which appears to have been entered, as I have said, on June 24, 1890. The cross-petition of the bank was on file at the date of the rendition of the judgment and decree in favor of Wood as guardian of Wagner.

The cross-petition of the bank was founded upon sundry promissory notes which are set out in its cross-petition and a second mortgage given upon the same property described in the other mortgage, to secure their payment. The cross-petition also contained a prayer for personal judgment against Cummer and the Flint Glass Sand & Stone Company, as well for the sale of the mortgaged premises.

Under sec. 5055, Rev. Stat., this cross-petition would appear as *lis pendens*—from the date of its filing, January 23, 1890. This section reads as follows:

"When the summons has been served, or publication made, the action is pending, so as to charge third persons with notice of its pendency; and while pending, no interest can be acquired by third persons in the subject-matter thereof, as against the plaintiff's title."

This section simply embodies in statutory form the established doctrine upon the subject of *lis pendens*. The plaintiffs in error in this case, Jennings and Berry, recovered a judgment against the Flint Glass Sand & Stone Company, for $600 and costs. It does not appear upon the record that the defendant, Cummer, was a party to this judgment—it was simply against the Flint Glass Sand & Stone Company. This judgment was rendered on March 31, 1891, in the court of common pleas of Lucas county, Ohio, and became a lien by force of the statute on the mortgaged premises described, from January 5, 1891, the date of commencement of the term upon which this judgment was rendered. On this judgment various payments have been made aggregating $253.39, and the balance remained unpaid. This judgment was assigned to Berry October 5, 1891. One-half of it was reassigned to the plaintiff, Jennings, April 19, 1892. This judgment was recovered pending the cross-petition proceedings above set forth in behalf of the bank and after the recovery of the Wood-Wagner judgment and decree. As before stated, it became a lien by virtue of the statute upon the mortgaged property from January 5, 1891. Execution was issued on the Wood-Wagner judgment above set forth at the instance of Palmer, the assignee thereof, May 5, 1892. It was levied on the personal property of the Flint Glass Sand & Stone Company on the same day. Decree was rendered on the cross-petition of the bank, May 7, 1892, being at the term of the common pleas which was begun on April 5, 1892. A personal judgment against Cummer and the Flint Glass Sand & Stone Company was also rendered in the same proceeding, for $48,746.66 and costs. The court found in rendering that decree and personal judgment, that the mortgage of the bank constituted a second lien upon the mortgaged property; that it was sub-

ject only to that of the Wood-Wagner lien; that there was due on the Wood-Wagner judgment and lien $8,746.61, with interest from April 8, 1890, at 7 per cent. per annum, still in force. It was directed that an order of sale should issue. The court also found the order of the liens in the same proceeding, as follows: First, the costs. Second, the amount due Palmer on the Wood-Wagner decree, as assignee thereof. Third, the amount due to the Ohio National Bank. Fourth, the balance to go to the Flint Glass Sand & Stone Company.

Execution was issued on the Berry-Jennings judgment on May 9, 1892. It may be observed in passing that this was two days subsequent to the rendition of the judgmen and decree in favor of the bank, which was on May 7, 1892.

On May 9, execution was issued on the Berry-Jennings judgment and was levied on the same day, on the same personal property seized upon the execution issued upon the Wood-Wagner judgment. On May 17, 1892, an order of sale was issued on the decree of the bank. On May 20, 1892, the personal property which had been levied upon first at the instance of Palmer on the Wood-Wagner judgment, and second at the instance of Jennings and Berry on their judgment, was sold to Palmer, for $8,450.00. It will be observed that this sale took place on the day before Jennings and Berry made application to be made parties to the pending proceedings to which I have referred, for the purpose of asserting the claims which they afterwards made. On May 21. 1892, being, as I have said, the day after the sale of the personal property and several days after the decree was had, Jennings and Berry made application to the court, or moved the court, for leave to be made parties. This motion was granted on June 13, 1892. An order of sale was issued on the decree of the bank, May 11, 1892. The mortgaged premises were sold to Palmer, under this order of sale on June 18, 1892, for $30,667.00, being two-thirds of the appraisement, and this sale was confirmed and distribution ordered July 2, 1892.

The cross-petition filed in the case sets forth succinctly the claim on the part of the cross-petitioner and shows plainly the matter in contention here. They set up the judgment, as I have already stated it, and the amount due upon it; the issue of execution at the instance of Palmer, on the first judgment and its levy upon the personal property and its advertisement for sale by the sheriff, and then say:

"That on May 9, 1892, these answering defendants duly caused an execution to be issued on their said judgment in said cause No. 30.598, to the sheriff of said county, who, on said day levied the same upon said personal property already in his possession seized under the levy hereinbefore mentioned in favor of said Henry E. Palmer, and thereby these answering defendants acquired a valid lien on said personal property next and subject only to the lien of said Palmer thereon.

Then they state the sale of the property and the price for which it was sold, and they add:

"That said Palmer by virtue of the decree rendered herein by this court on June 24, 1890, has long had the first and best lien upon the real estate described in the petition herein as security for the payment of his said judgment; that said real estate has at all times been worth many times the amount of his said judgment and he could easily have obtained full satisfaction from the sale of said real estate; that, notwithstanding the premises, said Palmer proceeded to levy and get the first lien upon the said personal property and without regard to the equitable

rights of these answering defendants, to have him satisfy his said judgment out of the fund arising from said real estate and to leave the fund arising from the sale of said personal property for the satisfaction of the judgment of these answering defendants, said Palmer has proceeded to exhaust the said personal property and thereby prevented these answering defendants from being satisfied therefrom; that in equity and good conscience these answering defendants are entitled to be subrogated to the extent of their said judgment to the lien of said Palmer upon said real estate and to his rights thereunder."

And the prayer of the petition is in accordance with that claim. Briefly, then, it may be stated that the claim of these plaintiffs in error is this—though before passing to that—we fail to find anything in this record, except the finding of facts by the court and the judgment thereon, which particularly interests Smith & Co., and the other parties associated.

"Mr. Huntsberger: Is not their cross-petition in the record there?

"The Court: No.

"Mr. Huntsberger: Then that is an omission.

"The Court: There is among the files, a motion by those parties to be permitted to be made parties and to file an answer and cross-petition; and that motion seems to have been granted, but there is nothing to show that they ever filed an answer and cross-petition; but the court passed upon their rights.

"Mr. Huntsberger: Yes, it was present in the court below.

"The Court: The petition of these plaintiffs in error, briefly, is this: that Palmer had his mortgage and decree upon the real estate; he had a levy upon this personal property. The plaintiff—by force of the statute, whether they chose to rely upon it or not—had a lien also upon the real estate, third in order, however, because the bank had the second lien by way of a mortgage upon the real estate. Jennings and Berry, having, as appears in the case, a second lien upon the personal property, by virtue of their levy subsequent to the levy of Palmer, and having also a lien really upon the real estate by force of the judgment only, nevertheless, as they claim, are entitled—Palmer having subjected the personal property to sale upon his execution and realized some $8,000 by that sale—they are entitled to have, to a proportionate extent, their mortgage satisfied from the proceeds of the real estate. And that claim is made upon the doctrine laid down in Green v. Ramage, 18 O. S., 428, where this proposition is stated by the court:

"Where A has a mortgage upon two lots, and B has a subsequent mortgage upon one, and C upon the other of the lots, of a later date than the mortgage of B, A cannot be compelled at the instance of B to exhaust first the lot on which C has his mortgage.

"In such case A will be required to make his debt out of both lots in proportion to the amount that each may produce."

And briefly stated by the court in its opinion, we find this conclusion:

"We think then that justice between Hillier and Green requires that each should have the full benefit of his mortgage, and this can only be done by requiring Wilson to take his debt out of the proceeds of both lots proportioned to the amount that each lot may produce."

The application of the doctrine to this case it is said will produce this result: Mr. Palmer has his decree and lien upon the real estate. A sale of the real estate produced some $30,000. He has his levy upon

Jennings et al. v. Bank et al.

the personal property. The personal property produced upon sale by the sheriff some $8,000, and now it is claimed that upon a proper application of the doctrine in the case of Green v. Ramage, *supra,* that these plaintiffs holding a subsequent lien upon personal property by virtue of their levy are entitled substantially to have Palmer's judgment satisfied proportionately from the proceeds of the real estate and from the proceeds of the personal estate, and that he having sold the personalty and having sold the real estate, that plaintiffs are entitled to be subrogated to his rights in that respect under the equitable doctrine which has been referred to in the cases cited.

Now upon the general subject, among the text-books cited (which really repeat one after the other the same doctrine) reference has been made to volume three of Pomeroy's Equity Jurisprudence, sec. 1414:

"The equitable remedy of marshaling securities, with that of marshaling assets, depends upon the principle that a person having two funds to satisfy his demands shall not, by his election, disappoint a party having but one fund. The general rule is, that if one creditor, by virtue of a lien, or interest, can resort to two funds, and another to one of them only, as for example, where a mortgagee holds a prior mortgage on two parcels of land, and a subsequent mortgage on but one of the parcels is given to another, the former must seek satisfaction out of that fund which the latter cannot touch. If, therefore, the prior creditor resorts to the doubly charged fund, the subsequent creditor will be substituted, as far as possible, to his rights. These rules must be taken with the modifications and exceptions that in their application the paramount encumbrancer shall not be delayed or inconvenienced in the collection of his debt, for it would be unreasonable that he should suffer because some one else has taken imperfect security; that the rights of third parties shall not be prejudiced; and that the parties themselves are creditors of the same debtor."

I call attention, in passing, to this clause in the section, which is fortified by a large citation of authorities: "These rules must be taken with the modifications and exceptions   *   *   *   that the rights of third parties shall not be prejudiced."

Again, in Volume 14 American and English Encyclopedia of Law, 686—where the section cited by counsel from Judge Story's Equity Jurisprudence, sec. 633, is copied; and reading a small portion of the discussion contained in the notation by the author, we shall find the doctrine stated as we understand it:

"The equity being against the debtor, it is equally against his judgment creditors whose liens were obtained subsequently to the lien of the junior creditor in whose favor the equity is enforced. Thus in Robeson's Appeal, 117 Pa. St., 628."

And, by the way, I might mention that these debtors are of opinion that that case overrules the case cited by counsel for plaintiff in error in their brief, found in 3 Watts (Penn.), 477, and I find that case cited in the brief of counsel to support several propositions.

"Thus in Robeson's Appeal, 117 Pa. St., 628, the owner of a tract of land gave a judgment to A, and then a mortgage to B. Subsequently the owner acquired a second tract, on which A, by a revival of his judgment, obtained a first lien."

So that it will be observed that A had a lien upon one tract, and B a mortgage upon the same tract, second in order; and then A acquired a first lien upon the second tract acquired afterwards by that debtor.

"Subsequently the owner mortgaged this second tract to C. Upon a distribution of the proceeds of both tracts it was held that C, having had record notice of the other liens, B, under his superior equity, could require that the proceeds of the second tract should be applied to A's judgment in relief of his own lien upon the first."

Here A has a first lien upon a tract of land and B has a second lien by mortgage. The debtor purchases the second tract upon which A obtains a first lien. Then C takes a mortgage upon the second tract, and the proposition ruled by the court was, that B, who had a second lien upon the first tract, could compel A to exhaust the second tract upon which B had no lien, even to the exclusion of C, who had taken a mortgage upon that tract thereby relieving the tract of the first purchaser upon which B had a second lien. And the court said :

"This equity, we have said, was against the debtor, and it is equally such against his subsequent mortgage creditors with notice, who can have no greater rights than the debtor had at the time the mortgage was given. This equity existed in favor of the appellants before the appellees acquired their lien; *prior in tempore potior in jure.* The appellees must be considered to have taken their mortgage subject to the prior equity of the appellants.

"In Delaware & Hudson Canal Co.'s Appeal, 38 Pa. St., 513, a mortgagor had other lands than those mortgaged, which, including the mortgaged premises, were bound by four earlier judgments. Subsequent to the mortgage were other judgments which were liens upon all the lands. Upon the distribution of the proceeds of a sale of all the lands the court subrogated the mortgagee to the rights of the senior judgment creditors in the lands not covered by the mortgage. It was distinctly held that the judgment creditors subsequent to the mortgage had no rights superior to those of their debtor. The same principle is recognized in Hastings' Case, 10 Watts (Pa.), 303. These cases and Robeson's Appeal, 117 Pa. St., 628, overrule Miller v. Jacobs, 3 Watts, 477, where it was held that a creditor who has a lien on two funds may throw the whole burden on one of them, to the exclusion of a junior encumbrancer, if the other fund is subject to incumbrances, which, though posterior in date, are sufficient to absorb the whole, because the effect of such a course is merely to postpone one creditor to another, and it does not enable the debtor to get back the estate discharged of the lien. In Hoff's Appeal, 84 Pa. St., 40, it was held that a *bona fide* purchaser may be unaffected by an equity of which he had no notice in fact.

"The general principle is explained by Judge Hare in a note to Aldrich v. Cooper, 2 Lead. Cases in Eq., 266, as follows: 'The equity has its root in the obligation of the debtor, but is also an equity among the creditors, that each shall, when it can be done without loss or inconvenience, so use his right that all may, as far as the circumstances admit, be satisfied in the order in which their liens severally accrued. A has a paramount lien on two tracts of land, B a lien on one of them, and C a subsequent lien on both. If A exhausts the tract which is the subject of B's lien, B will be subrogated to A's lien on the other tract, although C is thereby excluded from the fund.'"

Now here are A, B and C. A is first, B second upon a portion of the fund, and C third upon all of the estate. B is allowed to partake of the fund.

"A writer in the American Law Register, vol. 27, page 738, states the rule concisely as follows: 'If a paramount encumbrancer of two

funds, by his election of remedies, disappoints a junior creditor, who has a lien upon one of them only, the latter shall, to that extent, be substituted to the lien of the paramount encumbrance upon the other fund bound by it, as against the debtor and all claiming under him, by lien or title subsequent in time.' "

In the case of Philips v. Keels, 2 Ohio Circ. Dec., 568, I find this statement in the conclusion of the court upon the proposition here presented:

"Where one person has a lien upon two or more tracts of land, and another a lien upon only one of them, the person having the lien on all will be driven to assert it against that on which the other has no lien," unless the superior equities of others are interfered with, which shows a qualification of the general doctrine which seems to be of some importance.

We intended to state, but perhaps may have omitted to do so, that the judgment of the court of common pleas rendered in this case was against the claim made by the plaintiff in error. That is, of course, to be assumed from the fact that they are here with their petition in error. The fund was applied first to the Wood-Wagner judgment, and secondly, to that of the bank, which exhausted the entire fund. Now, applying these views briefly to the case in hand, I will refer to some of the facts which have been stated.

In the first place, Palmer having under his execution caused a levy to be made upon this personal property on May 5, 1892, and thereby acquired two securities for his debt; the mortgage which was prior in time, and the levy upon the personal property which at that time constituted the only charge or lien upon the property, it appears to us that upon that levy being made, the Ohio National Bank here could have compelled Palmer to exhaust the property so levied upon before resorting to the realty upon which it held a second lien. The right to do this Palmer possessed by the levy. The right so attached could not be displaced or impaired by a subsequent levy at the instance of another judgment creditor. That levy when made by Palmer constituted *pro tanto* satisfaction of the judgment. Upon a sale being made upon that execution there was no confirmation necessary ; there was no action of a court of record; the execution was issued and levied and the property sold in regular form and bid in by the judgment creditor. Unless upon some proceeding, instituted in proper form, that sale was set aside (which was never attempted in this case), the moment the sale was made and returned, there was, *pro tanto*, by operation of law, a satisfaction of the judgment.

Upon this proposition, I refer for a moment to two cases cited by plaintiff in error here :  Fassett v. Traber, 20 O., 540, the syllabus of which is as follows :

" When two creditors have each a lien on the same property of their debtor, and the one having the prior lien has also a lien on another fund for the same debt on which the subsequent lienholder has no claim, such prior lienholder will be compelled, in equity, to exhaust such fund before he proceeds to subject the property on which the other creditor has his lien.

" If, after bill filed by the subsequent lienholder to compel such subrogation, the prior lienholder delivers up his claim on the second fund, to the debtor, he will be compelled, as between him and the subsequent lienholder, to account for such fund as so much paid on his claim."

Now, here, on May 5th, Palmer had his decree on his first mortgage for his debt. He levied by execution upon the personal property here in question. The bank had a second lien, by mortgage, upon the real estate covered by Palmer's mortgage, but it had no lien upon the personal property. As the situation then was, therefore Palmer could have been compelled by the bank to first exhaust his levy upon the personal property on which the bank had no lien, to the relief of the bank so far as concerned the real estate upon which the bank had a second lien, and, under the ruling made in this case in Fassett v. Traber, *supra*, if after having made the levy Palmer had released or relinquished it, or wasted the personal property, he could have been compelled to account to the bank for the loss so sustained, that is to say, so far as concerned the real estate.

And in Teaff v. Ross, 1 O. S., 469, the same principle is applied, although there the controversy was between a purchaser and the mortgagee and not between a judgment creditor and the mortgagee. The syllabus in that case is as follows:

"H mortgaged land to T and afterwards sold it to O, and received payment. H informed T of the sale, and in order to remove the incumbrance, as he was bound to do by his contract with O, he proposed to give a new note for the debt, with a mortgage on real estate to secure it, to which T consented, and the new note and mortgage were accordingly executed and delivered, T agreeing not to prosecute the first mortgage if the property covered by the second was sufficient to pay the debt. The property was amply sufficient, but T neglected for sixteen months to deliver the mortgage for record, by means whereof the property was swept away under mortgages and conveyances made by H within that period.

" *Held*, that under these circumstances O's land was discharged from the lien of the first mortgage."

Now let it be borne in mind in this action that at the time Jennings and Berry recovered their judgment—at the time they made their levy upon this personal property subject to the levy of Palmer—that the proceedings of the bank upon its cross-petition operated under the statute as *lis pendens*, so that everything that was done in that action affecting or determining the rights of the bank as against the property proceeded against affected the attitude of Jennings and Berry precisely as though they were parties defendant. It is not necessary, where a man has instituted proceedings to subject property to sale to satisfy a lien, that he bring in all the parties who are supposed to acquire interest in the same property pending the action. That is the established doctrine, and it is placed here in the form of a statute by sec. 5055, Rev. Stat., to which we have referred. So far, therefore, as concerns the real estate and the right of the bank in that real estate to the rights of these claimants, Jennings and Berry, are affected by any judgment or decree made by the court in that proceeding *pendente lite*, it is precisely as though they were made parties defendant and were actually appearing in the case, so that the decree in favor of the bank upon its answer and cross-petition, which was rendered May 7, 1892, binds these parties so far as the real estate is concerned. Of course the personal property was not brought into the case in any shape or form; but, so far as the real estate is concerned and so far as the rights of the bank in each are concerned, the decree of the court fixing and establishing the rights of the bank and granting the relief to the bank, binds Jennings

and Berry just as much as if they were parties to the proceeding. Then that decree was rendered on May 7, 1892. It fixed the title and rights of all the parties in the mortgaged property, an order of sale and application of the proceeds in accordance with the findings of the court as to the rights of the parties. The sale was made. Now then, in our judgment, it is not competent for these creditors, Jennings and Berry, whether they were parties to this decree or not, it is not competent for them after the levy of May 5th, by Palmer, which created in the bank a right to have that personal property first sold and its proceeds subjected to the payment of Palmer's lien, to come in and by a subsequent levy upon their judgment displace this right of the bank to have the property so appropriated and its proceeds so applied. Here the bank, on May 7, 1892, obtained a personal judgment and a decree upon the mortgage executed along in 1888 or 1889. Mr. Palmer, upon his judgment, rendered in 18—, upon May 5th, levies upon this personal property. The moment that levy was made the right attached in the bank to require that the property should be first subjected to the payment of the Palmer judgment; and if, the right so having passed, Palmer had wasted or squandered the property, he would, nevertheless, by the law as recognized in these Ohio cases, among other authorities, would have been compelled to account for the distribution of the proceeds of the sale of the real estate to the bank, the loss of which he had permitted or the waste of which he had permitted. He couldn't do it after he had made the levy and secured a lien which provided a fund for the payment of this mortgage debt, which was a first lien, and the mortgage debt of the bank being a second lien, he could not prejudice the bank in that way. Now, then, can another creditor, after the rights of the bank have attached, come in and by a subsequent levy displace these rights which had attached in favor of the bank and require that a proportion of the proceeds of the personal property shall, in effect, be applied upon his debt by subrogating him to the original right of Palmer to have the mortgaged property subjected to the payment of his judgment and a portion of the proceeds of that mortgage applied upon his claim? We do not think it is competent. We think the reasoning of the determination of the cases cited from this encyclopedia is clearly against it.

For these reasons, the statement of which have been somewhat extended, we think the court below did not err and that the judgment should be affirmed.