This appeal is from a decree restraining defendant from dredging in certain parts of the bed of Little Beaver River which plaintiffs claim to own. The decree was based on the learned court's conclusion that the dredging proposed, and required in the future, would constitute a restrainable trespass on their land.
Little Beaver River flows into the Ohio River from the north, a short distance east of the Ohio state line. In 1911, the federal government, to improve navigation, constructed Dam No. 8 in the Ohio River, at a point in the State of West Virginia 5 miles below the Little Beaver. The dam raised the water in the Ohio and its contributing streams.[1] With the exception of a strip about 540 feet wide owned by plaintiffs,[2] intersecting the defendant's land at a point about 600 feet from the Ohio River shore, defendant owns all the land on the east shore of the Little Beaver, from the north shore of the Ohio River to the Ohio state line. On this land, plaintiffs constructed and maintain their tracks and bridge structures. About *Page 397 
1,400 feet from the Ohio River, on the east shore of the Little Beaver, defendant has constructed a coal dock with a present capacity of 4,000 tons a day, which is used as a retail coal yard and terminal for defendant's private railroad. Since 1932, its coal has been floated from its mines in this Commonwealth, down the Monongahela and the Ohio Rivers, and into the Little Beaver to this coal dock in barges which, defendant says in its brief, are 175 feet by 26 feet and capable of carrying 900 tons, although, in the present condition of the stream, defendant may only half load its barges. A stream carrying such traffic is navigable. "Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water": The Daniel Ball, 10 Wall. 557, 563; The Montello, 20 Wall. 430, 439; U.S. v. Holt State Bank, 270 U.S. 49; U.S. v. Utah,283 U.S. 64; Flanagan v. Phila., 42 Pa. 219; Conneaut Lake Ice Co. v. Quigley, 225 Pa. 605, 74 A. 648. The Ohio is an interstate navigable river. Since the construction of Dam No. 8, navigability of the Little Beaver to Mile 0.4 is a federal question: U.S. v. Holt State Bank, supra, page 55.
Between periods when the stream is naturally scoured out by its own current, sand, gravel and silt collect on the bottom and interfere with navigation. To clear the channel, defendant applied to the war department, pursuant to the River and Harbor Act of June 13, 1902, 33 USCA, section 565, page 512, and to the Act of March 3, 1899, 33 USCA, section 403, page 397, for and received permission to dredge "the channel of said river to a depth of 9 feet below pool level in the Ohio River for a distance of 0.4 of a mile from the junction of Little Beaver Creek with the Ohio River." (See Lane v. Harbor Commissioners,70 Conn. 685, 697, 40 A. 1058, 1062; Lewis Oyster Co. v. Briggs, 229 U.S. 82.) It also applied to and obtained *Page 398 
a permit from Water and Power Resources Board of Pennsylvania; Administrative Code, June 7, 1923, P. L. 498, section 1608.
While defendant was engaged pursuant to those permits, plaintiffs filed their bill contending (so far as now necessary to state the contention) that plaintiff owned in fee a portion of the river bed being dredged, and that the dredging was a continuing trespass producing irreparable injury. Defendant answered. Voluminous testimony was taken. An exhaustive and very helpful adjudication was filed by the learned chancellor, which, after consideration in banc, became the basis of the decree.
Their ownership,[3] it was thought, gave plaintiffs standing to prevent clearing the channel. They traced title out of the Commonwealth, prior to 1911, by warrants including the bed of the stream, and contended the stream was not navigable in its natural state before that year, and that, accordingly, their title was absolute. Defendant contended that the river was, and always had been, navigable, and that plaintiffs' land was subject to the resulting servitude, the dominant right of navigation.
If an improvement in navigation, lawfully made by the United States, permanently floods a riparian owner's fast land, his title is thereby divested for public use (improvement of navigation): Pumpelly v. Green Bay Co., 13 Wall. 166; U.S. v. Lynah, 188 U.S. 445, 468, 470; U.S. v. Cress, 243 U.S. 316; cf. Conneaut Lake Ice Co. v. Quigley, 225 Pa. 605, 612. The same divestiture must also result from the permanent additional flooding of land formerly submerged (and now navigable), even though the owners' title to the submerged land theretofore was absolute. The determination of plaintiffs' right to interfere by the desired injunction, therefore, does not turn on the navigability of the stream before the improvement, though that point was elaborately dealt with at the *Page 399 
trial and in the adjudication. The government raised the water level and created increased existing slack water in the Little Beaver to Mile 0.4; that is, the established pool full at low-water mark in the Ohio now extends that far up the smaller stream. For that distance, it is navigable. There is no evidence that would support a finding that the river is not navigable for that distance and the record is not concerned with navigability from that point toward the source of the stream. The improvement transformed the Ohio and its tributaries into "artificial canals instead of natural waterways": U.S. v. Cress, supra, page 326. Whether the change produced in the stream constituted a taking of plaintiffs' property requiring payment of compensation pursuant to the 5th Amendment is not a question for us on this record. On the completion of the improvement, the public became entitled to use it for the purpose intended. Such users are not trespassers. Navigation is the exercise of a right of way over water. If it becomes desirable to remove obstructions on what, it appears, is the natural river bottom, the plaintiffs cannot complain, if one entitled to use the right of way and adversely affected by the obstruction removes it pursuant to the regulations of the war department, to which Congress has entrusted the subject. On the right of the dominant owner to the full enjoyment of his easement, see Hammond v. Hammond,258 Pa. 51, 101 A. 855; Cain v. Aspinwall Co., 289 Pa. 535, 540,137 A. 610; Burris v. Peoples Ditch Co., 104 Calif. 248; Holm v. Davis, 41 Utah 200, 125 P. 403; McWilliam v. Cronin,75 N.Y. 474; Sell v. Finke, 295 Ill. 470, 129 N.E. 90; Orr Ewing v. Calquhoun, L. R. 2 A. C. 839. Here, of course, even the scope of defendant's possible activity is controlled by the federal legislation referred to and the conditions stated in the permit. When defendant, pursuant to federal permit, improves navigation by dredging the channel, it exercises a federal power; that power is not exhausted by the original improvement resulting from the construction of the dam which created the back *Page 400 
water, but continues for the improvement of navigation as and when required. There is a finding that the dredging inflicts no damage on plaintiffs' bridge piers or other structures in the river.
Decree reversed and bill dismissed at appellee's costs.
[1] "The effect of this was to canalize the Ohio River to some distance above the mouth of said creek. It raised the level of the pool in the Ohio River to 656 feet 8 3/8 inches [above sea level]; and by backwater in Little Beaver Creek, extending about four-tenths of one mile from its mouth, raised the surface of the water in the creek to the same level." (Eighteenth conclusion of law.)
[2] It is unnecessary to refer to the strips occupied by the state highway and by the traction company bridge and approach.
[3] Part of plaintiffs' land was acquired by deed in fee and part by condemnation; for the purposes of this review, it is unnecessary to distinguish between them.