## Public Service Lines Across Rivers

Department of Justice. Opinion to Hon. Thomas G. Buchanan, Chairman, Water and Power Resources Board.

MARGIOTTI, Attorney General, August 13, 1935.—This department is in receipt of your request to be advised whether the Water and Power Resources Board has authority to impose a reasonable charge upon public service corporations in granting permits to cross the stream beds of the waters of this Commonwealth, either by submerged pipe lines in the river bed or by electric lines crossing overhead.

So far as the public waters of the Commonwealth are concerned, we are of the opinion that you not only have the authority but it is your duty to do so under section 514 of The Administrative Code of April 9, 1929, P. L. 177, for the reasons herewith set forth.

The waters of the Commonwealth, generally speaking, fall into two classes—public and private. Public waters include the principal rivers and such streams and lakes as are navigable in fact. The non-navigable waters are private streams. In the former, the river beds belong to the Commonwealth because, as pointed out in Coovert v. O'Conner, 8 Watts 470, 477:

"All rivers, lakes and streams comprehended within the charter bounds of the province, passed to William Penn in the same manner as the soil. In grants of tracts of vacant lands by him or his successors, during the proprietary times, and by the commonwealth since, streams not navigable, falling within the lines of a survey, were covered by it and belonged to the owner of the tract . . . . When streams not navigable formed the boundary of such tract, the grantee acquired a title *ad filum aquæ* [that is to the middle of the stream]. The large rivers and principal streams, by nature navigable, belonged to the commonwealth, as well where there was no tide, as where the tide ebbed and flowed, contrary to the principles of the common law, and of some of the states, in which, in all rivers and streams where the tide did not ebb and flow, the grant of land, with a boundary on the stream, extended *ad filum aquæ*. Carson *v.* Blazer, 2 *Binn.* 475;

Shrunk *v.* Schuylkill Navigation Company, 14 *Serg. & Rawle* 71."

Again in Conneaut Lake Ice Co. v. Quigley, 225 Pa. 605, 611, the Supreme Court adopted with approval the following language of Pewaukee v. Savoy, 103 Wis. 271, viz.:

"It is the settled law that submerged lands of lakes within the boundaries of the state belong to the state in trust for public use, substantially the same as submerged lands under navigable waters at common law."

See also Commonwealth v. Pennsylvania Railroad Co., 78 Pa. Superior Ct. 389 (1922), where, speaking of the Allegheny River, the court, through Judge Trexler, said, at page 392:

"The stream is a highway and is the property of the State, over which it has dominion."

It is true that in Water Supply Commission, 22 Dist. R. 96 (1912), Judge Cunningham, then deputy attorney general, in a comprehensive opinion, points out a third class of rivers which he terms private navigable rivers, in which term he includes those rivers navigable in fact but the stream beds of which have been granted by the Commonwealth to private owners. It may now be questioned whether such class still exists in view of the very recent case of Cleveland & Pittsburgh R. R. Co. et al. v. Pittsburgh Coal Co., 317 Pa. 395, where it was held in the case of the Little Beaver River, though the plaintiff traced its title out of the Commonwealth by warrants including the river bed, and though the river had been made navigable thereafter only by reason of the damming of the Ohio River, into which it flowed, the defendant could not be restrained by the plaintiff from digging out the river bed, because its title must be regarded as having been divested for public use.

For further discussion of the relative rights of the Commonwealth and private owners, see opinion of former Deputy Attorney General Shull, Waters of Presque Isle Bay, 12 D. & C. 88, and recent informal opinion no. 600

of this department, directed to Hon. O. M. Deibler, the Commissioner of Fisheries.

In view of these authorities, it will be seen that the Commonwealth may now claim title to stream beds of all water courses, not only naturally navigable, but such as have been made navigable by artificial means. The Commonwealth may also claim title to stream beds, which, though originally navigable years ago, have become non-navigable by reason of accumulated deposits, as for example streams in the mining regions rendered non-navigable by culm deposits. This is because the ownership of the stream beds of such water courses must be determined according to the navigability of the stream at the time the lands bordering thereon were granted to private owners. In short, the Commonwealth can gain title to the beds of rivers made navigable artificially, but cannot lose title to the beds of rivers once navigable, no matter what their present status may be. In determining whether a particular stream had ever been navigable, we may regard this fact as proven prima facie in all cases where the State has by statute declared any stream to be a navigable stream or public highway.

What then are the powers and duties of the Water and Power Resources Board with respect to the waters of the Commonwealth?

By the various acts of assembly, the Water and Power Resources Board, formerly the Water Supply Commission, is given general jurisdiction over all of the waters of the Commonwealth, whether public or private, and has the power to supervise and regulate encroachments, dams or any act which may in any manner diminish the course, current or cross-section of any stream or body of water within the Commonwealth. This jurisdiction in this regard follows from the fact that no private owner owns the flowing water. The flowing water of the Commonwealth is prima facie the property of the State. Riparian owners, public or private, may have the use thereof, but

may not remove it from the stream to a greater extent than necessary for domestic uses without the consent of the State, nor in navigable streams to the extent of impeding navigation.

Acting under this power, the Commonwealth has granted the Water and Power Resources Board plenary powers to safeguard and protect the interests of the Commonwealth in regard thereto. It is the appropriate department or agency of the Commonwealth to which is committed the supervision of the rivers, lakes and watercourses. See Water Supply Commission, 22 Dist. R. 96, opinion of Special Deputy Attorney General Schnader, Water and Power Resources Board, 14 D. & C. 68, and opinion of Deputy Attorney General Shull, Waters of Presque Isle Bay, 12 D. & C. 88.

That the Commonwealth may require permission to be secured with conditions to be met before its property may be occupied and used by private parties for their own profit cannot be doubted. See Bell Telephone Co. of Pa. v. Lewis, Sec'y, 317 Pa. 387, 393.

Under what circumstances then may rights to cross the public rivers be given?

This question is answered by section 514 of The Administrative Code of April 9, 1929, P. L. 177, 71 PS §194, which reads as follows:

"Except as otherwise in this act expressly provided, a department, board, or commission, shall not sell or exchange any real estate belonging to the Commonwealth, or grant any easement, right of way, or other interest over or in such real estate, without specific authority from the General Assembly so to do, but a department, board or commission may, with the approval of the Governor, grant a license to any public service corporation to place upon, in, or over, land of the Commonwealth, any public service line, if such line will enable any State building or State institution to receive better service, or, if such line is necessary for the service of persons living adjacent to the Commonwealth's land upon, in, or over

which it is proposed to run the line. Every such license shall be revocable upon six months' written notice by the Commonwealth, and upon such other proper terms and conditions as the department, board, or commission, with the approval of the Governor, shall prescribe, *and unless any such line is primarily for the benefit of a State building or State institution, the license shall provide for the payment to the Commonwealth of compensation for the use of its property in such amount as the department, board, or commission granting it shall, with the approval of the Governor, prescribe.*" (Italics ours.)

The term "land of the Commonwealth" in the section quoted includes, of course, submerged lands. See Century Dictionary Encyclopedia, which defines land in its broadest sense as the solid substance of the earth's surface; any part of the continuous surface of the solid materials constituting the body of the globe; as dry or submerged land, mountain or desert land. The word "land", therefore, is not to be limited to fast or dry land, but must be used in its general broad sense.

To summarize, therefore, title to stream beds of navigable waters is in the Commonwealth. It is the owner of the land over which the water flows. As such owner it may impose terms or conditions for the use thereof, subject only to the superior right of the Federal Government to insist that navigation shall not be impeded, which right was surrendered to the Federal Government in the Federal Constitution. Subject only to this limitation, the Commonwealth's title is as extensive as the fee simple title of any owner of the land, and the ownership extends not only to the river bed but to the air above the water that flows over the bed.

Section 514 prescribes the manner in which licenses may be granted to cross the Commonwealth's lands, reasonable interpretation of which would cover submerged lands as well as fast lands, and unless the public service line that crosses either on the stream bed or in the air over the same is primarily for the use of a State building

or State institution, there is a plain mandate to impose compensation for the use of the Commonwealth's property. From Frederic Ray, Harrisburg.