# Leaf et al., Appellants, v. Pennsylvania Co.

*Railroads—Eminent domain—Condemnation of land—Evidence —Experts—Price of other lands—Damages—Amount—New trial —Discretion—Waters—Rivers—Navigable rivers—Low watermark.*

1. A witness in a railroad land damage case cannot be asked the price paid for a part of the same piece of land by the railroad company.

2. In grants of vacant lands, streams not actually navigable belong to the owner of the tract, or, where they form a boundary, the grantee acquires title to the center.

3. Large rivers and principal streams, navigable, belong to the Commonwealth, and a grantee takes title to low watermark as to such streams.

4. An act of assembly, declaring a stream navigable which is in fact navigable, will not cause that stream to be considered as a non-navigable river prior to the act; so that a grantee, bounding thereon, will not take title to the middle of the stream.

5. Where a river is in fact navigable it always remains so, notwithstanding declarative legislation with respect to it.

6. Erosions from an owner's land, caused by excavations made by one having the right of eminent domain, are elements of damage.

7. A court may instruct the jury to use their good sense or "horse sense," where the estimates of damage range from $4,000 to $160,000, and where the extent of the taking is a small strip along a former condemnation.

8. There is no abuse of discretion in refusing a new trial under such circumstances.

Argued October 6, 1920.    Appeal, No. 46, Oct. T., 1920, by plaintiff, from judgment of C. P. Beaver Co., Dec. T., 1916, No. 405, on verdict for plaintiff, in case of James P. Leaf et al., executors of Milton S. Marquis, deceased, v. Pennsylvania Company, operating Cleveland & Pittsburgh Railroad.    Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ.    Affirmed.

Feigned issue to determine damages for land taken in widening railroad company's right-of-way.    Before BALDWIN, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $4,750.    Plaintiff appealed.

*Errors assigned* were various instructions and rulings appearing by the opinion of the Supreme Court.

*Richard S. Holt,* of *Holt, Holt & Richardson,* and *J. Norman Martin,* for appellants.—Witness may be asked on cross-examination his knowledge of particular sales and the prices asked for property in the community for

the purpose of testing his competency to testify: Becker v. R. R., 177 Pa. 252; Rea v. R. R., 229 Pa. 106; Henkel v. R. R., 213 Pa. 485.

The instruction that plaintiff's title extended only to low watermark on the Big Beaver creek was error: Coovert v. O'Conner, 8 Watts 470.

The instruction given as to right to recover for injury to property caused by relocation of bridge abutments, was erroneous: White v. R. R., 229 Pa. 480.

The instruction as to damages was improper: Com. v. Nazarko, 224 Pa. 204; Stevenson v. Coal Co., 203 Pa. 316.

*Wm. A. McConnell,* for appellee.—Plaintiff could not be asked to give the price at which particular properties sold: Roberts v. Phila., 239 Pa. 339.

The evidence showed that the Big Beaver creek during all of its existence had been navigable in fact. Being a navigable stream the title of plaintiffs only extended to low watermark: Johns v. Davidson, 16 Pa. 513; Wood v. Appal, 63 Pa. 210; Fulmer v. Williams, 122 Pa. 191; Palmer v. Farrell, 129 Pa. 162.

OPINION BY MR. JUSTICE KEPHART, December 31, 1920:

Appellants were the owners of a piece of land situate on an island in the Ohio river at the mouth of Beaver creek, Beaver County. Appellee, for the purpose of widening its railroad, appropriated a part of this land alongside of its right-of-way, and appellants (landowners), being dissatisfied with the verdict and judgment, took this appeal.

Complaint is made of the denial of the right to bring out by cross-examination the price paid some time before for a part of this same piece of land, by this company. The witness was being examined preliminarily, to test his competency, and evidence as to the price paid for a part of the same land, or lands similarly situated, was not admissible; had the examination been conducted

after competency was established and an estimate of value given, there was nothing on the record to justify this cross-examination. The sale price in no way aided or was a factor in determining this witness's estimate of value: see Pa. Company, Trustee, v. City of Phila., not yet reported.) The first assignment of error is dismissed.

The jury were instructed that, as Beaver river was navigable, in fact, opposite plaintiffs' land, plaintiffs' title ran to low watermark only. The appropriation covered a piece of land of 3.24 acres and was part of a larger tract which passed by grant from the Commonwealth in 1794. In 1798 Big Beaver creek, the boundary therein mentioned, was, by act of assembly, made a navigable river. It is only to small streams not navigable that the principle of ownership to the middle of the stream applies in Pennsylvania. In grants of vacant lands by the proprietors or the Commonwealth, streams not actually navigable, thus conveyed, belong to the owner of the tract; when such stream forms a boundary, the grantee acquires a title to the center; but the large rivers and principal streams, by nature navigable, belong to the Commonwealth. This is contrary to the principles of the common law, where the grantee takes title to the middle of the river wherein the tide does not ebb and flow regardless of navigability, but in this State the rule of title to low watermark applies to rivers actually navigable, or made so by the legislature; in the former, the test is navigability in fact, and the latter does not apply to grants made prior to legislative action: Carson v. Blazer, 2 Binney 474; Coovert v. O'Conner, 8 Watts 470, 477; Johns v. Davidson, 16 Pa. 512, 520; Wood v. Appal, 63 Pa. 210; Fulmer v. Williams, 122 Pa. 191; Palmer v. Farrell, 129 Pa. 162. An act of the legislature, made subsequent to grant by the Commonwealth, declaring a river navigable which was in fact navigable, does not cause it in law to be nonnavigable prior to the act, or a grant, with boundary thereon, to extend to

the middle of the river. Where the river is in fact navigable, it remains so and will be treated as such, notwithstanding declarative legislation on the subject.

Beaver creek, at its mouth where it flows into the Ohio river and next to the appropriation here made, was a navigable river, and, from an examination of the deeds, the Beaver river referred to in the grant of 1794 lies to the north and west of the entire piece of land thus granted, while the Ohio river is mentioned at the south and east, in which locality the land condemned lies, and, as we have already indicated, had the act and the grant applied to this side of the island, plaintiff owned but to low watermark, notwithstanding the Act of 1798, as the waters were in fact then navigable. The trial judge did not err in thus charging the jury.

We cannot understand how the court could be convicted of error for the matter set forth in the third assignment. The excavation of the new channel was done under the direction of United States authorities. The new abutment was moved sixty-five feet west of the old one; the land between the old and new abutments, to the extent of the appropriation, was cut out and graded to a point six feet below the level of the water when poolfull, and the effect of it was to widen the river at this point. The jury had just been instructed that if the excavations at the river bottom (that is, removing of the land just mentioned) would have the effect of eroding or wearing off a part of plaintiff's land remaining, it was a matter for them to take into consideration in determining value. The portion of the charge which follows, and is here complained of, instructed the jury not to consider anything with reference to the removal of the old abutment which was at the water's edge, as it was an artificial structure, and defendant would not be liable for the removal of an artificial barrier. Had it been permitted to stand when the other work was completed, appellants might have cause for complaint.

The evidence of damages ran from $4,000 to $160,000; appellants' witnesses contended the land east of the Pittsburgh & Lake Erie Railroad was injured as a factory site. Appellee urged that this taking was simply a widening to a small extent along land that had already been devoted to railroad uses. The jury had visited the premises. The court, in instructing them, said: "When it comes to the question of damages, in a case of this kind, you should use above everything else your good common sense, your horse sense, if I may use that term." The wide disparity of figures called for the experience of common sense. The jury were not told to use their own judgment as to value, and disregard the evidence submitted; they were told to apply to the information thus received their good common sense as men, and not to be misled by any extraordinary ideas of value that may have been submitted by the witnesses in the case.

In the portion of the charge embodied in the fifth assignment, the court simply stated an axiom. The better qualified a person is to do a thing, the more able he is to do it, applying it to the witnesses on both sides alike.

On the amount of the verdict: the trial judge no doubt was acquainted with his own county and knew generally the location of the land in question. He saw the witnesses on the stand, heard the testimony, and says, "As to the amount of the verdict we cannot say that it is insufficient"; having all these matters before him, if he felt wrong had been done, he should have granted a new trial. That he did not is not convincing that he abused his discretion, or that error was committed. We find no error in this record.

Judgment affirmed.