Miller et al., Appellants, *v.* Miller et al.

Argued November 21, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*W. B. Eilenberger,* with him *David B. Skillman* and *Harvey Huffman,* for appellants.

*F. B. Holmes,* with him *Aaron Goldsmith* and *C. C. Shull* and *C. D. Shull,* for appellees.

OPINION BY BALDRIGE, J., June 3, 1935:

The appellants filed this bill in equity against Frank C. Miller, a surviving partner, for an accounting of the assets of a partnership that existed between him and Rufus W. Miller. The original defendant died while the suit was pending and his executors were substituted as defendants.

The bill prayed that an account be filed of all the partnership dealings and transactions from the date of the last settlement between the partners in 1922 until the date of the dissolution on October 11, 1925, as well as its assets and liabilities as of the date of dissolution, and the value of the interest of the plaintiffs' decedent at that time ascertained, and for a further accounting of the dealings and transactions of the partnership from the date of the dissolution to the date the bill was filed.

A first and partial account was filed covering the period from January 1, 1922, to October 11, 1925, and a second account covering the period from October, 1925, to September, 1931. Exceptions were filed to both accounts.

In disposing of the exceptions, the chancellor found that the partnership was dissolved on October 11, 1925, and that Rufus W. Miller had made no pecuniary investment in the partnership; that all the funds were contributed by Frank C. Miller, and at the time of his death, Rufus W. Miller owed the partnership $980.87. Accordingly, the chancellor decreed that the appellants were not entitled to receive anything from the partnership assets as they existed October 11, 1925, or to an

accounting for the succeeding years. This appeal followed the final decree which sustained certain exceptions, which are not involved herein.

The learned chancellor found upon sufficient evidence that on September 2, 1895, Frank C. Miller, Rufus W. Miller and others leased to the Pocono Spring Water Ice Company, for the term of ninety-nine years, all the land that might be covered by the backing of the waters in the erection of a dam on the Tunkhannock Creek in Tobyhanna Township, Monroe County. Frank C. Miller and Rufus W. Miller were stockholders in this company, the former being the owner of four hundred shares and the latter of twenty shares. On March 20, 1899, the ice company conveyed to Frank C. Miller, his heirs and assigns, the exclusive right to fish and boat in all the waters of the corporation, which were known as Lake Naomi. On February 17, 1900, Frank C. Miller, his wife not joining, executed an instrument, designated as an assignment, in consideration of one dollar, purported to "grant, bargain, sell, alien, set over and transfer unto Rufus W. Miller, his heirs and assigns, all the one-fourth interest in and to the fishing, boating and bathing rights, and privileges at, in, upon and about Lake Naomi ...... which said rights and privileges were granted and conveyed to me by the Pocono Spring Water Ice Company by their indenture dated the 20th day of March, 1899." It will be noted that the deed to Frank C. Miller from the ice company did not mention bathing rights or privileges.

The same day, February 17, 1900, Frank C. Miller and Rufus W. Miller, executed a partnership agreement, without a definite term, stating that the parties had "purchased and acquired the exclusive fishing, boating and bathing rights and privileges, at, in, upon and about Lake Naomi," and declaring that the parties had associated themselves in business "for the purpose of the erection and maintenance of boat houses and

bath houses on the said Naomi Lake, and for the purchase and maintenance of boats for use on said lake; the said bath houses and boats to be rented for hire and proceeds thereof to be divided between the parties hereto in proportion to their respective interest in and to the said bathing, boating and fishing rights and privileges, to wit: the said Frank C. Miller shall receive three-fourths of the net proceeds of said business, and the said Rufus W. Miller shall receive one-fourth of the net proceeds of the said business." The agreement also provided that Frank C. Miller was to contribute three-fourths and Rufus W. Miller one-fourth of the cost and expenses, and that the losses would be borne in like proportion.

During the existence of the partnership, the parties, in the summer season, conducted a business of the character described in the agreement. The income from the bathing was derived from rentals for concessions granted to certain summer camps and from charges paid by the public for the use of the bathing beaches and bath houses. Between 1900 and 1922, three beaches were successively constructed and abandoned at different locations on the lake, which, according to the blueprint offered in evidence, covered about 200 acres. In 1922 the last beach and buildings which were used for purposes incident to bathing, dancing, etc., were constructed by Frank C. Miller on his own land and at his sole expense, which amounted to between $26,000 and $27,000. There was no evidence, however, that any of the real estate owned by either partner, or any of the rights and privileges which Frank C. Miller acquired from the Pocono Spring Water Ice Company, or those acquired by Rufus W. Miller from Frank C. Miller, were ever conveyed to or vested in the partnership, and the lower court found accordingly. As above noted, it was expressly stipulated in the partnership agreement that if any real estate owned by the partners

in an individual capacity would be used by the partnership, no rentals should be charged therefor.

There can be no doubt that the rights and privileges conveyed in the deeds were incorporeal hereditaments, as they issued out of, were concerned with, or annexed to those corporeal: 2 Blackstone 19. Whether they were appurtenant or in gross was disputed. The court below held that the grant to Frank C. Miller was an incorporeal easement in gross and not subject to transfer by him. We need not discuss that phase of the case, as, in our judgment, the court was correct in holding that the written articles of partnership showed it was not the intention of the parties to transfer to the partnership the rights and privileges individually acquired.

Nor do we find any reason to disturb the finding of the court below that there was no competent evidence to establish any pecuniary value of the boating and fishing rights, and that they were not assets of the partnership subject to an accounting. Whatever rights and privileges, if any, Rufus W. Miller, individually, may have acquired from Frank C. Miller, by virtue of the deed above recited, conveying a one-fourth interest to him, they were unaffected by the dissolution of the partnership, which occurred by reason of the former's death. They are now vested in the appellants; but they can not be determined in this proceeding for an accounting of partnership assets.

The appellants contend that even if the right of bathing was not conveyed to the partnership by deed, it acquired that right by prescription. In our judgment, title to an incorporeal right of this nature can not be thus acquired in the circumstances before us, and, in addition, the appellants are confronted with their pleadings. They did not aver any prescriptive rights as the source of the bathing or other privileges, but relied upon express grants evidenced by recorded deeds,

and they are now precluded from setting up a title by prescription.

The appellants contend further that Frank C. Miller and those claiming under him are estopped from asserting that he did not convey the bathing privileges and that they are not partnership property. The lower court, we think, was correct in holding that as Frank C. Miller did not possess the bathing rights, it was impossible for him to convey them. The partnership agreement, while it mentioned bathing rights, recited the fact that the rights and privileges conveyed were the same as those he acquired from the Pocono Spring Water Ice Company by indenture, dated the 20th of March, 1899, and recorded February 19, 1900, in Misc. "D," page 647. Rufus W. Miller knew, or had means of knowing, the rights and privileges acquired by Frank C. Miller. Therefore, the doctrine of estoppel, as it assumes the lack of knowledge by the party claiming estoppel, did not apply: Culbertson, Receiver, v. Cook et al., 308 Pa. 557, 565, 162 A. 803.

The appellants further complain that the accountant failed to charge himself with certain fees for dock privileges which he received. It appears from the evidence that this money was received for the use of his own property, built by him on his land and paid for from his individual funds. This money never was partnership property and was not subject to be accounted for as partnership assets.

There was also objection to the salary paid Thomas T. Miller as manager of the partnership. The learned court below points out that his compensation was fixed by Frank C. Miller in the line of partnership business, and the partnership is, therefore, bound by it, and the sum was paid to Thomas T. Miller each year as shown by the account. There was no evidence that Rufus W. Miller raised any objection to the payment of the manager's salary, although he was about the premises and

knew the manner in which the partnership was operated. The learned court below held that in view of the character of services performed by the manager, his compensation was not so unreasonable as to justify a surcharge, and, therefore, dismissed the exception.

After a careful review of the entire case, we find no merit in the appellants' assignments of error.

Decree of the lower court is affirmed. Costs on this appeal to be paid by appellants.