493 A.2d 713

**Bradley R. WAXMAN, Appellant,**

v.

**LORANGER PLASTICS CORPORATION.**

Superior Court of Pennsylvania.

Argued March 19, 1985.

Filed May 17, 1985.

Petition for Allowance of Appeal
Denied Oct. 15, 1985.

Joseph E. Altomare, Tionesta, for appellant.

David W. Swanson, Warren, for appellee.

Before CIRILLO, HOFFMAN and ROSENWALD, JJ.[*]

HOFFMAN, Judge:

The basic issue on appeal is: "[W]hat is the appropriate method of allocating, between adjoining riparian owners, property situate between the high water mark and the low water mark where the deeds contain descriptions terminating at the top of the bank, and accordingly offer no guidance whatsoever as to how such allocation should be accomplished." (Brief for Appellant at 8). For the reasons stated herein, we affirm the order below.

The relevant facts are as follows (see Diagrams A and B for illustration): The parties own adjoining parcels of land situated along a riverfront in Warren County. Each parcel is roughly rectangular in shape and, according to their respective deeds, each is bounded on the north by Clark Street and on the south by the Allegheny River. However, the stated distances in the deeds cause the southern bound-

---

[*] Judge Edward Rosenwald of the Court of Common Pleas of Philadelphia County, Pennsylvania, is sitting by designation.

ary of each parcel to terminate at or about the original location of the top of the river bank. Thus, because the respective sidelines of each parcel run at angles oblique to one another, if the sidelines were extended to the water's edge, they would intersect within the expanse of land lying between the original top of the bank and the low water mark. This expanse of land had once been subjected to seasonal flooding with resultant changes in the river level but by 1977 had become high, dry and usable land. The common boundary line between the two parcels was created by James Clark and his wife when they conveyed their lot (now owned by defendant-appellee) to M. Beecher in 1885. Beecher, in turn, conveyed the lot to defendant-appellee in 1976. Plaintiff-appellant claims title to two adjoining parcels of land, namely, the "Carlson" and "Bacon" lots, which he acquired from James L. Sturdevant and his wife in 1979. These lots had been created in 1905 and 1903, respectively, as part of a subdivision by the Helping Hand Building and Loan Association. Helping Hand had received its title by sheriff's deed from William Kline and his wife in 1896.

In 1977, defendant-appellee constructed a building which extended beyond the southern boundary of the original deed description of its parcel and onto the disputed area lying between the original top of the bank and the water's edge. Consequently, plaintiff-appellant filed an action in ejectment with a demand for damages against defendant-appellee, alleging that this building encroached upon his land. On September 9, 1982, the lower court entered an Opinion and Decree Nisi granting ejectment relief to plaintiff-appellant. Upon defendant-appellee's filing exceptions, the court took testimony on August 8, 1983, and granted the exception concerning the proper rule of shoreline apportionment. Plaintiff-appellant then filed a supplemental brief in opposition to the exceptions. On September 15, 1983, the lower court entered an order (1) granting defendant-appellee's exceptions to the September 9, 1982 Decree Nisi, (2) dividing the disputed land between the parties in accordance with defendant-appellee's Exhibit A–13, see Diagram A, and

(3) entering Final Decree in favor of defendant-appellee. This appeal followed.

The parties each espouse a different rule of shoreline apportionment. Under appellant's rule, appellee's building would be an encroachment upon appellant's land thereby entitling appellant to ejectment relief; but under appellee's rule, the building would properly be situated on appellee's land. *See Lakeside Park Co. v. Forsmark,* 396 Pa. 389, 395, 153 A.2d 486, 489 (1959) (patentee of land bordering river takes to middle of nonnavigable river and to low water mark of navigable river).

Appellant contends that the lower court erred in failing to apply the rule of shoreline apportionment set forth in *Wood v. Appal,* 63 Pa. 210 (1869), as follows:

The serpentine course of the stream, or its relative distances from the bank at different points, can make no serious difference as to the line of approach to the water's edge. *Starting from the bank, a direct course to the stream, or at right angles to the stream, must always afford the shortest and most certain boundary of river frontage.* Of course the rule as now laid down applies only to a case where no other intention is disclosed by the return of survey, or the deed.

*Id.* at 225 (emphasis added). Appellant therefore argues that, where as here, the sidelines of the competing parcels converge drastically so as to come to an apex before the water's edge, allocation must be had by lines running from the top of the bank on a direct and perpendicular course to the thread of the stream. *See* Diagram B.

Appellee, however, argues that the lower court properly applied the proportional shoreline method in dividing the disputed river frontage according to appellee's Exhibit A–13. Under this method, adjoining landowners would receive river frontage on the new water's edge (low water mark) proportional to their frontage on the original top of the bank (high water mark). *See* Diagram A. Appellee distinguishes *Wood v. Appal, supra,* on the ground that, in that case, the high water mark and low water mark were rough-

ly parallel and therefore a line drawn perpendicular to the stream awarded the parties equal frontage on both the old and new banks. Here, however, the width between the high water mark and low water mark narrows and then widens as the river bends; therefore, a perpendicular line division would not yield proportional frontage on the old and new banks, but, instead, would create an inequitable, random apportionment along the shoreline, *e.g.*, appellee's access to the river may be completely cut off whereas a large triangular portion of the frontage upstream from the parties' parcels may be left unapportioned.

After careful consideration of these competing claims, we find appellee's arguments more persuasive and therefore conclude that the proportional shoreline method applied by the lower court is the most equitable and reasonable resolution of the dispute. We also find *Wood v. Appal, supra*, distinguishable for two reasons. First, subsequent to that case, our Supreme Court emphasized that the "rule" set forth therein should be limited to the facts of that case and that each particular case must be decided with regard to its own circumstances, rather than following any inflexible rule of law. *Kreiter v. Bigler*, 101 Pa. 94, 101 (1882). Additionally, we agree with appellee that, where the low water mark and high water mark are not parallel along the shoreline, applying the "right-angle" method of apportionment would produce absurd divisions of river frontage. Our position is further supported by modern precedent:

[I]n apportioning and dividing the bed of a river or the riparian rights areas in the river, as between two or more riparian tracts fronting on the same bank, in the absence of an agreement, specification, or statute, or other definitely controlling factor, the court should apportion and divide the area equitably in such a way that each of the riparian tracts will be assigned an extended frontage in the river based on and generally proportionate to the length of such tract's frontage along the riverbank or shore. For the most part the authorities are in agreement that in the apportionment of appurtenant areas of

the river from the shore out to or toward the thread, it is the extent of the individual riparian tract's frontage on the riverbank or shore which controls the apportionment of the area in the river, rather than such riparian tract's depth, area, or configuration, or the direction in which its upland sidelines run.

\*     \*     \*     \*     \*     \*

[I]t has frequently been recognized by judicial authorities that the specific rules stated or applied are not unbending but are subject to modification to insure an equitable apportionment and division of the area in the particular situation required to be adjudicated.

\*     \*     \*     \*     \*     \*

Particularly in connection with the apportionment and division of the appurtenant portion of the river as between riparian tracts fronting on the same bank, where such bank or shore is reasonably straight rather than much curved or irregular, some of the courts have developed, adopted, or applied one or the other of several right-angle or perpendicular projection methods for locating the side divisional lines from the shore out to the terminal line in the river; the only common feature of the several methods being that the direction along which the upland division lines run down to the shore is disregarded and the side lines from the shore out into the water are projected in a direction which is perpendicular to some specific base line. . . .

*Where the shore is curving or irregular in front of the riparian tracts involved, or the line of the channel, thread of the stream, or other outer limit line in the river is irregular, curving, or, if straight, not parallel with the general course of the shore, the method of apportionment and division usually adopted is to give each of the riparian tracts fronting along the same shore an abutting area in the river having a width on the channel line or other outer boundary line in the river proportionate to such tract's frontage along the shore, the objective being to achieve an equitable appor-*

*tionment of the available river area as between the riparian tracts fronting thereon.*

78 Am.Jur.2d *Waters* §§ 396–97 (1975) (citations in footnotes omitted) (emphasis added).

Therefore, having viewed the record and, in particular, the various survey diagrams illustrating the different methods of shoreline apportionment, we hold that the lower court correctly applied the proportional shoreline method of allocating river frontage so as to give the parties the same amount of frontage along the water's edge as they are strictly entitled to by deed along the original top of the bank. Accordingly, we affirm.

Affirmed.

Conewango Creek

J. 21029/85

(A)

N

Allegheny River

Water's Edge
(Low Water Mark)

Original Top of Bank
(High Water Mark)

Plaintiff
(appellant)

Defen-
dant

Clark    St.

DIAGRAM A

—— Proportional Shoreline
Method Applied by Lower
Court

(simplification of Defendant's
Exhibit A-13)

J. 21029/85
(B)

Conewango Creek

Allegheny River

Water's Edge
(Low Water Mark)

Original Top of Bank
(High Water Mark)

Plaintiff
(appellant)

Defen-
dant

Clark St.

N

DIAGRAM B

—— Wood v. Appal Rule Applied
by Plaintiff-Appellant

(simplification of Defendant's
Exhibit A-16