# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Frank E. Beishline and Sandra Z.
Beishline, Husband and Wife; Phillip
M. Balisle and Patricia E. Balisle,
Trustees of The Phillip M. Balisle
Revocable Trust Dated July 15, 2016;
Ronald V. Vought, II and Karen Beth
Vought, Husband and Wife; Clyde
Bartholomew, Jr. and Judith M.
Bartholomew, Husband and Wife;
Laurie Wurster Trust; Donald J.
Bowman and Kathy E. Bowman,
Husband and Wife; Dale G. Moore
and Suzanne Moore, Husband and
Wife; and Stillwater Holdings, LLC,
     Petitioners

   v.

Commonwealth of Pennsylvania,
Department of Environmental
Protection; Commonwealth of
Pennsylvania, Conservation and
Natural Resources; and the
Pennsylvania Fish and Boat
Commission,
     Respondents

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
: No. 719 C.D. 2019
: SUBMITTED: May 12, 2020
:
:
:
:
:
:
:
:
:
:

BEFORE: HONORABLE P. KEVIN BROBSON, Judge
    HONORABLE CHRISTINE FIZZANO CANNON, Judge
    HONORABLE ELLEN CEISLER, Judge

OPINION BY JUDGE CEISLER      FILED: June 12, 2020

Petitioners Frank E. Beishline and Sandra Z. Beishline, Husband and Wife;
Phillip M. Balisle and Patricia E. Balisle, Trustees of The Phillip M. Balisle
Revocable Trust Dated July 15, 2016; Ronald V. Vought, II and Karen Beth Vought,
Husband and Wife; Clyde Bartholomew, Jr. and Judith M. Bartholomew, Husband
and Wife; Laurie Wurster Trust; Donald J. Bowman and Kathy E. Bowman,

Husband and Wife; Dale G. Moore and Suzanne Moore, Husband and Wife; and Stillwater Holdings, LLC (collectively, Petitioners), petition for review of the Pennsylvania Department of Community and Economic Development, Board of Property's (Board) May 15, 2019 Final Adjudication and Order (Final Adjudication). Through this Final Adjudication, the Board dismissed Petitioners' "Amended Caveat"[1] on the basis of lack of jurisdiction. The issue before this Court is whether the Board has jurisdiction to determine whether a body of water in Pennsylvania is navigable. After thorough consideration, we reverse this Final Adjudication and remand for proceedings consistent with this opinion.

## I. Historical Context and Relevant Legal Principles

Before we delve into the facts of the instant appeal, a general explanation of the historical context and overview of the relevant law is necessary.

> By the Royal Charter of March 4, 1681, King Charles II of England granted "William Penn, his heirs and assigns ... make, create and constitute the true and absolute proprietaries of the Contrey [Pennsylvania]" conveying to

---

[1] Petitioners should not have filed a caveat, as it was not the correct way for Petitioners to seek relief in this situation. Per Section 6113 of what is known as the Public Lands Act, "[a] person with a claim on land for which a warrant application has been made under this chapter may file a caveat[,]" but "[a] caveat must be filed prior to the granting of the [relevant] patent. No caveat shall be recognized for land after the patent of the Commonwealth has been granted for the land." 68 Pa. C.S. § 6113(a), (c). A caveat is a formal notice of an unregistered interest in land, while a land patent is "an instrument by which the government conveys a grant of public land to a private person" and a land warrant is "[a] document entitling a person to receive from the government a certain amount of land by following prescribed legal steps." BLACK'S LAW DICTIONARY 252, 956, 1234 (9th ed. 2009). Since this matter does not involve a challenge to a pending warrant application, the Amended Caveat is procedurally improper. Even so, the issue of this procedural impropriety is not currently before us as an appellate issue. Moreover, we think it far wiser to focus upon the *substance* of Petitioners' administrative filing, as the Board seems to have done, rather than the name Petitioners chose to give it. *See Taylor v. Pa. State Police*, 132 A.3d 590, 599 (Pa. Cmwlth. 2016); Final Adjudication at 7-10 (Board states "[n]otwithstanding Petitioners' titling of pleading, this matter does not involve a caveat" but does not dismiss the Amended Caveat on that basis).

2

him "an immediate and absolute estate in fee to the province of Pennsylvania." *Thompson v. Johnston*, 6 Binn. 68, 70 (Pa. 1813).

*Dutch Corner Historical Soc. v. Stahl*, 78 A.3d 1201, 1202 (Pa. Cmwlth. 2013). "All rivers, lakes and streams comprehended within the charter bounds of the province [of Pennsylvania, as dictated by King Charles II], passed to William Penn in the same manner as the soil." *Coovert v. O'Conner*, 8 Watts 470, 477 (Pa. 1839). Penn and his successors then operated as Pennsylvania's proprietors until the Commonwealth of Pennsylvania (Commonwealth) acquired their interests in 1779 "and [thereby] assumed title to all public land [within the bounds of the Royal Charter] not yet conveyed." *Dutch Corner*, 78 A.3d at 1202. By doing so, **"the [Commonwealth] succeeded to the rights,** both of the [C]rown and of the proprietors, **in the <u>navigable</u> waters and the soil under them."** *Shively v. Bowlby*, 152 U.S. 1, 23 (1894) (emphasis added).

In 1929, the General Assembly created the Board "to hear disputes over land held or claimed by the Commonwealth."[2] Through Section 1207 of the Administrative Code of 1929 (Code),[3] the General Assembly conferred upon the Board broad authority over such disputes, including "*exclusive* original jurisdiction over *any* claims involving title to land occupied or claimed by the Commonwealth, such as claims in actions to quiet title." *Krulac v. Pa. Game Comm'n*, 702 A.2d 621, 623 (Pa. Cmwlth. 1997) (emphasis in original).[4]

---

[2] "Board of Property," Pennsylvania Department of Community and Economic Development, https://dced.pa.gov/local-government/boards-committees/board-of-property (last visited June 11, 2020).

[3] Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 337.

[4] Section 1207 of the Code reads, in full:

A body of water's navigability is central in our Commonwealth to determining whether it is privately owned or the property of the public at-large. As the Pennsylvania Supreme Court articulated many years ago,

> [i]n grants of tracts of vacant lands by [William Penn] or his successors, during the proprietary times, and by the Commonwealth since, streams not navigable, falling within the lines of a survey, were covered by [such grants] and belonged to the owner of the tract, who might afterwards convey the body of the stream to one person and the adjoining land to another . . . . When streams not

---

The Board . . . shall, subject to any inconsistent provisions in this act contained, continue to exercise the powers and perform the duties by law vested in and imposed upon the said [B]oard.

[The Board] shall hear and determine, in all cases of controversy on caveats, in all matters of difficulty or irregularity touching escheats, warrants on escheats, warrants to agree, rights of preemption, promises, imperfect titles, or otherwise, which heretofore have or hereafter may arise in transacting the business of the Land Office in the Department of Community Affairs: [Functions of Department of Community Affairs under this act transferred to Department of Community and Economic Development. *See* Section 301 of the Code, *added by* the Act of June 27, 1996, P.L. 403, 71 P.S. § 1709.301]. Provided, however, that no determination of the Board . . . shall be deemed, taken and construed to prevent either of the parties from bringing their action at the common law, either for the recovery of possession or determining damages for waste or trespass.

**The Board . . . shall also have jurisdiction to hear and determine cases involving the title to land or interest therein brought by persons who claim an interest in the title to lands occupied or claimed by the Commonwealth.**

The [B]oard shall make its determination within thirty (30) days after the final hearing on any of the above matters.

71 P.S. § 337 (emphasis added).

**There is no dispute between any of the parties that the question of whether the Board has jurisdiction to hear this case hinges upon the language contained in the third paragraph of Section 1207.**

4

navigable formed the boundary of such tract, the grantee acquired a title *ad filum aquæ* [*i.e.*, to the middle of the stream]. **The large rivers and principal streams, by nature navigable, belonged to the Commonwealth, as [did the navigable streams] where there was no tide, [or] where the tide ebbed and flowed**[.]

*Coovert*, 8 Watts at 477 (internal citation omitted and emphasis added); *accord Leaf v. Pa. Co.*, 112 A. 243, 243-44 (Pa. 1920) ("In grants of vacant lands by the proprietors or the [C]ommonwealth, streams not actually navigable, thus conveyed, belong to the owner of the tract; when such stream forms a boundary, the grantee acquires a title to the center, but the large rivers and principal streams, by nature navigable, belong to the [C]ommonwealth."). Similarly, the United States Supreme Court has noted that

> by the established law of [this Commonwealth], the owner of lands bounded by navigable water has the title in the soil between high and low water mark, subject to the public right of navigation, and to the authority of the legislature to make public improvements upon it, and to regulate his use of it.

*Shively*, 152 U.S. at 23.

There is no specific definition of navigability in this context.

> Navigation and navigability are portentous words. They mean more than the flotation of buoyant vessels in water: if it were otherwise, any tarn capable of floating a canoe for which a charge could be made would make the water navigable. They mean more than some commercial use to which collected water is put: if this were not so, every spring-fed pool capable of being bottled and sold for drinking water would be navigable. No single factor can control.

*Lakeside Park Co. v. Forsmark*, 153 A.2d 486, 489 (Pa. 1959). Determining a body of water's navigability thus calls for a fact-specific, multi-pronged inquiry:

> [T]he concept of navigability should not be limited alone by lake or river, or by commercial use, or by the size of

5

water or its capacity to float a boat. Rather it should depend upon whether water is used or usable as a broad highroad for commerce and the transport in quantity of goods and people, which is the rule naturally applicable to rivers and to large lakes, or whether with all of the mentioned factors counted in the water remains a local focus of attraction, which is the rule sensibly applicable to shallow streams and to small lakes and ponds. The basic difference is that between a trade-route and a point of interest. The first is a public use and the second private.

*Id.*; *accord Cleveland & P. R. Co. v. Pittsburgh Coal Co.*, 176 A. 7, 9 (Pa. 1935) (quoting *The Daniel Ball*, 77 U.S. 557, 563 (1870)) ("[R]ivers . . . are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.") *Barclay R.R. & C. Co. v. Ingham*, 36 Pa. 194, 201-02 (1860) ("[O]ur creeks and smaller rivers, such as have been granted by warrant and survey . . . are private property, but if of sufficient capacity, at any stages of water, to be used for transportation of lumber or other goods, they are held subject to that public easement which our English ancestry guarded with great jealousy[.]").

In sum, if a body of water is found to be navigable, it, along with all the "submerged lands [underneath it,] are owned by the Commonwealth and held in trust for the benefit of the public." *Delaware Ave., LLC v. Dep't of Conservation & Nat. Res.,* 997 A.2d 1231, 1233 (Pa. Cmwlth. 2010) (citing *Poor v. McClure*, 77 Pa. 214, 219 (Pa. 1873)). If, however, a body of water is deemed non-navigable, then it and any submerged lands underneath it may be possessed as private property. *Carson v. Blazer*, 2 Binn. 475, 492-94 (Pa. 1810).

## II. Facts and Procedural Background

With the historical context and relevant legal principles explained, we now turn to the current matter. Petitioners own eight properties in Fishing Creek Township, which is located in Columbia County, Pennsylvania. All of these properties either abut or are bisected by a stream called Fishing Creek. Final Adjudication, Findings of Fact (F.F.), ¶1. Fishing Creek begins in Sugarloaf Township, Pennsylvania, and winds its way for 30 miles through Columbia County before emptying into the Susquehanna River near Bloomsburg, Pennsylvania. *Id.*, ¶3. It is undisputed that neither the Commonwealth nor its subordinate agencies have either a recorded interest in, or have appropriated via eminent domain, any portion of Petitioners' properties. *Id.*, ¶¶4-5.

According to Petitioners, members of the general public repeatedly entered onto Petitioners' properties in order to use Fishing Creek for bathing, boating, fishing, and swimming. Am. Caveat, ¶56. Petitioners reported these incursions to the Commonwealth, Department of Environmental Protection; Commonwealth, Department of Conservation and Natural Resources;[5] and the Pennsylvania Fish and Boat Commission (collectively, Respondents). *Id.*, ¶¶54-58, 63. However, Petitioners were unsuccessful in getting Respondents to help protect what Petitioners claim is their exclusive ownership of, and control of riparian rights for, portions of Fishing Creek. *Id.*, ¶¶51-52, 58. According to Petitioners, Respondents will not offer assistance since they believe Fishing Creek is a navigable waterway and, therefore, that the public-at-large has the right to use Fishing Creek in such a manner. *Id.* Petitioners also assert that Respondents directed state and local law enforcement agencies not to interfere with the public's use of Fishing Creek. *Id.* Notably,

---

[5] Petitioners erroneously call this Commonwealth agency "Commonwealth of Pennsylvania, Conservation and Natural Resources."

Respondents took the position that they had not made "a final determination concerning the issue of [Fishing Creek's] navigability[,]" as only "a court of competent jurisdiction" had such authority. Petitioners' Br. in Opposition to Respondents' Preliminary Objections, Ex. I; Certified Record at 459. Furthermore, outside of Petitioners' averments, there is no evidence in the Certified Record that Respondents directed state and local law enforcement agencies to refrain from taking action against members of the public-at-large who used Fishing Creek, or as to what these law enforcement agencies' obligations were regarding handling Petitioners' complaints.

On July 2, 2018, Petitioners filed a "Caveat" with the Board, followed by an "Amended Caveat" on August 14, 2018. Therein, Petitioners argued that they were entitled to declaratory judgments regarding their ownership of Fishing Creek. In Count I, Petitioners asserted that the chains of title for their properties can be traced back to the aforementioned Royal Charter from King Charles II to William Penn and that these properties have been in private hands ever since. Am. Caveat, ¶¶69-76, 78-89. According to Petitioners, this "Crown Grant," and subsequent continuity of private ownership, establishes that they also own the contested sections of Fishing Creek. *Id.*

In Count II, Petitioners averred that Fishing Creek is not a navigable waterway, which would therefore vest exclusive title to its streambed in the owners of the adjacent properties (*i.e.*, Petitioners). *Id.*, ¶¶91-116. Petitioners also requested that the Board invalidate any determination by Respondents that Fishing Creek was navigable. Petitioners further sought injunctive relief and asked the Board to bar Respondents, as well as anyone else, from asserting any claim to Petitioners' property in the future. *Id.*, Count II Wherefore Clause.

8

Respondents filed preliminary objections and argued that the Board should dismiss the Amended Caveat for the following reasons.

1. Count I of Petitioners' Amended Caveat was legally insufficient and did not state a claim upon which relief could be granted, since navigability is the test for determining ownership of a streambed and Fishing Creek is navigable. Preliminary Objections, ¶¶8-26. Furthermore, Petitioners' "Crown Grant" theory has neither been recognized as valid in Pennsylvania nor could it override the navigability standard. *Id.*

2. The Board did not have subject matter jurisdiction over Count II of Petitioners' Amended Caveat, due to the Board's lack of statutory authority to determine whether a body of water is navigable. *Id.*, ¶¶28-39.

3. The Amended Caveat was an improper mechanism for seeking declaratory relief regarding ownership of Fishing Creek's streambed. *Id.*, ¶¶41-49. This is because Petitioners failed to provide complete title abstracts or other, similar evidence regarding the chain of title for six of their eight properties and, in addition, did not "allege that the Commonwealth . . . ha[d] granted a warrant, accepted a survey, or granted any patent on land to which . . . Petitioners claim[ed] an interest." *Id.*[6]

---

[6] In this context, patents, warrants, and surveys all relate to disposition of vacant or unappropriated land within our Commonwealth. *See* 68 Pa. C.S. §§ 6103, 6105, 6108, 6110, 6113. "Land is 'unappropriated' when no patent has been issued by the Commonwealth. 68 Pa. C.S. § 6101. Land is 'vacant' to which no office rights are outstanding. *Id.*" *Dutch Corner*, 78 A.3d at 1203.

4. The Board did not have statutory authority to grant injunctive relief. *Id.*, ¶¶51-54.

5. Certain paragraphs in the Amended Caveat should be stricken, as they contained scandalous or impertinent averments. *Id.*, ¶¶56-64.

On May 15, 2019, the Board issued its Final Adjudication,[7] dismissing Petitioners' Amended Caveat due to lack of jurisdiction to determine navigability. In making this determination, the Board relied on Section 1207 of the Code to determine the scope of its jurisdictional powers. Final Adjudication at 6-7. The Board noted that "through the actions of Respondents and their agents the Commonwealth appears to be claiming an interest in Fishing Creek – because it is navigable – [that the Commonwealth holds] in trust for the benefit of the public." Final Adjudication at 6. Even so, the Board ruled that it could not consider the merits of the Amended Caveat, as Section 1207 did not authorize the Board to issue a declaratory ruling regarding whether Fishing Creek is navigable. In the Board's view, the question of whether Fishing Creek is navigable was the first issue that had to be addressed, but it was without statutory authorization to make such a determination. *Id.*

On this basis, the Board sustained Respondents' preliminary objection regarding the Board's jurisdiction to determine navigability and dismissed the entire Amended Caveat. *Id.* at 10. Petitioners then filed the instant Petition for Review.

---

[7] In its adjudication, the Board indicated that the parties filed briefs supporting and opposing the preliminary objections between November 9, 2018, and January 4, 2019. Final Adjudication at 2. The Board then says it "deliberated [over] this matter at [the Board's] meeting [on] January 18, 2019" and then issued the adjudication after that. *Id.* There is no transcript of this Board deliberation, nor is there any indication that oral argument was held regarding Respondents' preliminary objections.

## III. Issues

On appeal, Petitioners offer a number of claims which can be distilled down to the following issues. First, the Board erred by sustaining Respondents' preliminary objection to the Board's jurisdiction because both Petitioners and Respondents have made competing claims to Fishing Creek's streambed. Petitioners' Br. at 32-37, 43-51. Petitioners' claims are based on so-called "Crown Grants" to their predecessors-in-interest, as well as the putative non-navigability of Fishing Creek, in contrast to Respondents' position that Fishing Creek is navigable and, therefore, is subject to use by the public at-large. *Id.* This matter thus falls within the broad jurisdictional scope conferred upon the Board by Section 1207 of the Code and the Board can rule upon whether Fishing Creek is navigable. *Id.* Second, the Board's dismissal of the Amended Caveat violated Petitioners' procedural due process rights under both the Pennsylvania and United States Constitutions, since they have no other forum in which to obtain a determination regarding ownership of Fishing Creek. *Id.* at 37-43. Thus, the Board's dismissal of the Amended Caveat completely prevented Petitioners from challenging the merits of Respondents' assertion that Fishing Creek is navigable. *Id.*

Petitioners' "Crown Grant" argument is not relevant at this juncture, as the pertinent question before us is the scope of the Board's jurisdictional powers, and, therefore, we decline to address the merits of this argument. Consequently, we move on to whether the Board has jurisdiction to determine whether a body of water in this Commonwealth is navigable, a question of first impression for our Court.[9] As previously discussed, Section 1207 of the Code vests the Board with "jurisdiction to hear and determine cases involving the title to land or interest therein brought by

---

[8]  In ruling on preliminary objections, the courts must accept as true all well-pled allegations of material fact as well as all inferences reasonably deducible from the facts. . . . However, unwarranted inferences, conclusions of law, argumentative allegations or expressions of opinion need not be accepted. . . . For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery, and any doubt must be resolved in favor of the non-moving party.

*Christ the King Manor v. Dep't of Pub. Welfare*, 911 A.2d 624, 633 (Pa. Cmwlth. 2006), *aff'd,* 951 A.2d 255 (Pa. 2008).

  In general, our standard of review in the context of Board adjudications is limited to determining whether the Board violated a petitioner's constitutional rights or committed an error of law and whether the Board's findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704. Where, as here, an appeal hinges upon a question of statutory interpretation, our review regarding the Board's legal analysis and resultant adjudication is "*de novo* and plenary." *Danganan v. Guardian Prot. Servs.*, 179 A.3d 9, 15 (Pa. 2018); *see also* 1 Pa. C.S. § 1921 (legislatively established standards for judicial interpretation of statutes).

  [9] We acknowledge that, in the past, our Commonwealth's courts of record have made determinations regarding the navigability of various bodies of water. *See*, *e.g.*, *Lakeside*, 153 A.2d at 487; *City of Philadelphia v. Pa. Sugar Co.*, 36 A.2d 653 (Pa. 1944); *Pa. Power & Light Co. v. Mar. Mgmt., Inc.*, 693 A.2d 592, 593 (Pa. Super. 1997); *Dep't of Envtl. Prot. v. Espy*, (C.C.P. Huntingdon Cnty.) No. 03-781, filed Jan. 29, 2007, 2007 WL 5379127. These cases, however, all involved navigability disputes which were either between private parties or where no party raised the novel jurisdictional argument presented in the instant appeal – specifically whether the **Board** has authority to determine navigability of a specific body of water where that determination is part of a broader dispute between the **Commonwealth** and private parties over who owns the streambed of that body.

persons who claim an interest in the title to lands occupied or claimed by the Commonwealth[.]" 71 P.S. § 337.

> [T]he plain intent of the legislature in adding [this] paragraph [to Section 1207 in 1953] was "to expand the jurisdiction of the Board . . . by granting . . . it power to hear cases involving title or interest in all lands held by the Commonwealth." *Stair v. P*[*a.*] *Game Comm*[*'n*], . . . 368 A.2d 1347, 1348 n.4 ([Pa. Cmwlth.] 1977) (emphasis in original).
>
> Based on such legislative intent, this Court has consistently held that [this] paragraph of Section 1207 vests in the Board . . . *exclusive* original jurisdiction over *any* claims involving title to land occupied or claimed by the Commonwealth, such as claims in actions to quiet title.

*Krulac*, 702 A.2d at 623 (emphasis in original). Furthermore, despite the Board's belief to the contrary, we have consistently determined "that the Board . . . has the power to grant declaratory relief when a petition for declaratory judgment is filed within [the scope of that paragraph.]" *Costanza v. Dep't of Envtl. Res.*, 606 A.2d 645, 647 (Pa. Cmwlth. 1992) (quoting *Kaiser Energy, Inc. v. Dep't of Envtl. Res.,* 535 A.2d 1255, 1257 & 1257 nn. 2-3. (Pa. Cmwlth. 1988)); *see* Final Adjudication at 9.

At its heart, the Amended Caveat revolves around a dispute over land claimed by both Petitioners and Respondents, specifically Fishing Creek's submerged streambed. Respondents themselves argued before the Board that "the right to the soil and water of a navigable stream, is . . . vested in the Commonwealth — as the representative and trustee of the people." Respondents' Br. in Support of Preliminary Objections to Am. Caveat at 6. Furthermore, with regard to Fishing Creek itself, Respondents have stated,

> [i]t is [our] position . . . that . . . Fishing Creek is navigable and therefore the public has the right to use and access . . . Fishing Creek and associated submerged lands.

13

> . . . .
>
> As trustees for the public resources, [we] believe that some or all of [us] have the authority to assert Commonwealth property claims.
>
> . . . .
>
> Landowners who believe they hold title to property claimed by the Commonwealth may seek a remedy before the . . . Board[.]

Petitioners' Br. in Opposition to Respondents' Preliminary Objections, Ex. I; Certified Record at 459. We therefore agree with the Board that "the Commonwealth [thus] appears to be claiming an interest in Fishing Creek – because it is navigable – in trust for the benefit of the public." Final Adjudication at 6.

We disagree, however, with the Board regarding its jurisdictional authority to determine navigability. It is true that a final determination regarding ownership of Fishing Creek's streambed cannot be made without addressing the predicate issue of navigability. Even so, under Section 1207 of the Code, *the pertinent threshold question* as to whether the Board has jurisdiction in this matter is this: is someone "claim[ing] an interest in the title to lands occupied or claimed by the Commonwealth[?]" 71 P.S. § 337. As the answer to this question here is clearly in the affirmative, the Board has exclusive original jurisdiction to consider the merits of Petitioners' Amended Caveat. Consequently, we hold that the Board committed an error of law by concluding otherwise.[10]

## V. Conclusion

For the reasons set forth in this Opinion, we reverse the Board's dismissal of

---

[10] Since we have resolved this appeal in Petitioners' favor on the basis of their jurisdictional argument, we need not address their now moot contention that the Board's refusal to rule upon their Amended Caveat violated their due process rights.

Petitioners' Amended Caveat and remand this matter to the Board, with instructions that it rule upon the remainder of Respondents' preliminary objections.

_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Franke E. Beishline and Sandra Z.   :
Beishline, Husband and Wife; Phillip  :
M. Balisle and Patricia E. Balisle,   :
Trustees of The Phillip M. Balisle   :
Revocable Trust Dated July 15, 2016; :
Ronald V. Vought, II and Karen Beth :
Vought, Husband and Wife; Clyde   :
Bartholomew, Jr. and Judith M.    :
Bartholomew, Husband and Wife;   :
Laurie Wurster Trust; Donald J.    :
Bowman and Kathy E. Bowman,   :
Husband and Wife; Dale G. Moore  :
and Suzanne Moore, Husband and  :
Wife; and Stillwater Holdings, LLC, :
            Petitioners        :
                         :
        v.             :  No. 719 C.D. 2019
                         :
Commonwealth of Pennsylvania,   :
Department of Environmental    :
Protection; Commonwealth of     :
Pennsylvania, Conservation and   :
Natural Resources; and the      :
Pennsylvania Fish and Boat     :
Commission,           :
            Respondents    :

## **O R D E R**

AND NOW, this 12th day of June, 2020, the Pennsylvania Department of Community and Economic Development, Board of Property's (Board) May 15, 2019 Final Adjudication and Order, through which the Board sustained Respondents' preliminary objection to the Board's jurisdiction over Petitioners' Amended Caveat, is REVERSED. Furthermore, this matter is REMANDED to the Board, with

instructions that it rule upon the remainder of Respondents' preliminary objections to Petitioners' Amended Caveat.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge